664 A.2d 916

**MONTGOMERY WARD et al.**

v.

**Frances WILSON.**

**No. 135, Sept. Term, 1994.**

Court of Appeals of Maryland.

Sept. 15, 1995.

Reconsideration Denied Nov. 3, 1995.

.

John B. Kaiser (McCarthy, Bacon & Costello, all on brief), Lanham, for petitioners.

E. Gregory Lardieri, Greenbelt, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

ELDRIDGE, Judge.

We issued a writ of certiorari in this case to review the rulings by the courts below concerning the torts of malicious prosecution and false imprisonment, as well as the requirements for the allowability of punitive damages in malicious prosecution and false imprisonment actions.

## I.

Frances Wilson filed a complaint in the Circuit Court for Prince George's County against Montgomery Ward Stores and one of its "Loss Prevention Managers," Jeffrey Bresnahan, alleging false imprisonment and malicious prosecution, and seeking both compensatory damages and punitive damages. On March 5, 1992, the defendants filed a motion for partial summary judgment with respect to punitive damages. They argued that, in light of *Owens–Illinois v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992), which had been decided a few weeks earlier, no award of punitive damages could be recovered in Maryland absent clear and convincing evidence of tortious conduct characterized by actual malice. Contending that "the Complaint fails to state any facts which would amount to evil motive, intent to injure, ill will or fraud by [Montgomery Ward] or its employees," the defendants argued that punitive damages were not recoverable in the case as a matter of law. The circuit court, after a hearing, denied the defendants' motion.

The case was tried before a jury in May 1993. The evidence established that during the summer of 1987 several customers of the Montgomery Ward store in Temple Hills, Maryland, had complained of unauthorized credit charges for women's clothing which had appeared on their monthly statements, and that Jeffrey Bresnahan, a loss prevention manager with Montgomery Ward, had investigated the unauthorized

charges. Frances Wilson had become a target of Montgomery Ward's investigation, and Wilson was ultimately arrested for credit card fraud as a result of information given to a District Court commissioner by Bresnahan on behalf of Montgomery Ward.

The plaintiff and the defendants presented entirely different versions of the facts underlying Bresnahan's investigation of Wilson. The defendants' version of events was presented to the jury principally through the testimony of the defendant Bresnahan and of two other Montgomery Ward employees, Sandra Fuller and Lisa Holmes. Bresnahan testified that he used personnel records and register receipts to establish that Fuller had operated the register in the women's clothing department when the unauthorized transactions were made. Bresnahan interviewed Fuller. According to both Bresnahan and Fuller, Fuller told Bresnahan that she had rung up credit charges for a co-employee, Wilson, although Wilson had not produced a charge card. According to Fuller, Wilson had on several occasions asked Fuller to charge purchases to a charge account number which was handwritten on a piece of paper. Sometimes Wilson told Fuller that the account number was her cousin's, and at other times that it was her sister's. Although company policy required employees to check the identification of customers charging purchases without producing a credit card, Fuller stated that she permitted Wilson to charge the goods without showing identification. According to Fuller, Wilson later told Fuller that nobody could get in trouble for making the unauthorized charge purchases because the store would be unable to prove what had been done.

Bresnahan testified at trial that he had found Fuller to be forthright and cooperative in her interview with him. He went on to testify that, after the interview, he had tried to verify Fuller's story. Bresnahan checked additional personnel records and established that Wilson had indeed been working in the women's clothing department when the unauthorized purchases had been made. Bresnahan interviewed Fuller again, and then told his superiors of the status of his investigation. Next, he interviewed Wilson. Wilson told Bresnahan

that she knew nothing about the fraudulent credit charges, and she refused to give a written statement. Bresnahan testified at trial that Wilson had been curt and unhelpful during the interview. Nevertheless, he also stated that he had wanted to investigate the matter further before concluding that Wilson had been responsible for the unauthorized credit charges.

Bresnahan arranged for a security assistant to interview another employee, Lisa Holmes. According to Holmes's trial testimony, she told the security assistant that she had once seen Wilson give Fuller a credit card number handwritten on a piece of white paper, and had seen Fuller charge goods for Wilson using the number. In addition, Holmes stated that Wilson had explained that the handwritten account number was her cousin's. Holmes also said that Wilson had told her not to say anything about the transaction to members of the loss prevention department during the investigation.

Bresnahan testified that he took no immediate action against Wilson. Bresnahan stated that he wanted to see whether additional complaints about unauthorized transactions would be forthcoming, and that he also had to "go through the trail of command" at Montgomery Ward before he could proceed further. Bresnahan testified that at a meeting attended by Bresnahan, two senior loss prevention managers, the Personnel Manager, and the Store Manager of the Temple Hills store, a "group consensus" was reached "that we had enough evidence to press charges." In addition, Bresnahan testified that he had not known Wilson personally before he began his investigation and that he had no feelings of ill will towards her.

The plaintiff's theory of the case at trial was, primarily, that Bresnahan had not performed an adequate investigation before he brought the charges against Wilson. Bresnahan testified during cross-examination that he had not compared Wilson's signature with the signatures on the unauthorized charge slips and that he had not sought expert handwriting analysis of the signatures. In addition, Bresnahan stated that, al-

though the unauthorized purchases included "full-figure" sweaters and a "maternity bra," he nonetheless continued to suspect that Wilson, who apparently was of slight build, was responsible for them.

Wilson's testimony at trial was inconsistent with the testimony of Fuller and Holmes. Wilson testified that she had never made any credit purchases at the Montgomery Ward store. She specifically denied ever having made any credit card purchases in which Fuller was the cashier, or any credit card purchases on behalf of another person. In addition, Wilson stated that she had never asked Holmes and Fuller not to answer the loss prevention department's questions about unauthorized credit card transactions.

As earlier indicated, Bresnahan prepared an application for a statement of charges and presented the application to a District Court commissioner in Prince George's County. The commissioner issued a warrant for Wilson's arrest. Two members of the Prince George's County Police Department subsequently arrested Wilson at the Temple Hills store. Wilson testified at trial that customers and fellow employees saw her being handcuffed and removed from the store, and that she felt "scared, nervous, humiliated and embarrassed." Wilson's mother told the jury that Wilson had been nervous and upset after the incident, but that she had eventually recovered. Both Wilson and her mother stated that Wilson had no criminal record and had never previously been arrested.

Only limited evidence was introduced at trial with respect to the disposition of the criminal prosecution for credit card fraud against Wilson. Before the trial in the present case, the defendants had filed a motion in limine to "preclud[e] the Plaintiff from raising the issue of an erroneous entry in her criminal prosecution marked 'not guilty.' " According to the defendants, the criminal charges against Wilson were dismissed because several witnesses failed to appear for the trial, which had already been rescheduled three times. Wilson did not challenge the accuracy of the assertion. In this civil action, the circuit court limited evidence of the disposition of

the criminal case to statements that the charges against Wilson had been dismissed. All parties acquiesced in the circuit court's ruling.

After the plaintiff had presented her case, the defendants moved for judgment on the ground that the evidence showed, as a matter of law, probable cause for Wilson's arrest. The defendants also argued that the plaintiff had failed to establish either false imprisonment or malicious prosecution. The circuit court denied the motion. At the conclusion of all the evidence, the defendants again moved for judgment. They renewed their contentions that, as a matter of law, the evidence demonstrated probable cause and failed to establish either false imprisonment or malicious prosecution. With respect to a possible award of punitive damages, the defendants renewed their argument that an award of punitive damages could not be based on implied malice and that the plaintiff had presented no evidence of actual malice. In addition, the defendants contended that, under Maryland law, evidence of the defendants' financial worth was required to be submitted to the jury before an award of punitive damages could be assessed. The circuit court denied the defendants' motion.

The trial judge instructed the jury that, under the circumstances of the case, the defendants would not be liable for false imprisonment or malicious prosecution if they had probable cause to believe that Wilson had committed a theft offense.[1] The circuit court instructed the jury at length on the

---

1. This instruction presumably was based upon Maryland Code (1973, 1995 Repl.Vol.), § 5–307 of the Courts & Judicial Proceedings Article, which provides as follows:

"A merchant or an agent or employee of the merchant who detains or causes the arrest of any person shall not be held civilly liable for detention, slander, malicious prosecution, false imprisonment, or false arrest of the person detained or arrested whether the detention or arrest takes place by the merchant or by his agent or employee, if in detaining or in causing the arrest of the person, the merchant or the agent or employee of the merchant had, at the time of the detention or arrest, probable cause to believe that the person committed the crime of 'theft,' as prohibited by § 342 of Article 27 of the

meaning of probable cause, elaborating upon an initial definition which the court stated as follows:

> "Probable cause is the reasonable belief that the Plaintiff was guilty. That is, the facts and circumstances which the Defendant knew, or should have known, would lead a reasonable person to believe that the Plaintiff had committed the offense."

In addition, the court instructed the jury that "failure to conduct an adequate investigation may destroy the probable cause.... So that probable cause does not exist if a proper investigation could have cleared the accused."

With respect to the malicious prosecution count, the circuit court instructed the jury that "malicious prosecution is the beginning or continuing of a legal prosecution with malice and without probable cause against another, where the proceedings terminate in favor of the other person." The circuit court gave the following instruction concerning the element of malice required to establish the tort of malicious prosecution:

> "A person acts with malice if his primary purpose in starting a prosecution is other than bringing the offender to justice. If a prosecution was started without probable cause, you may find from that alone some evidence of malice."

Later, in instructing the jury on the issue of punitive damages, the court returned to the concept of malice, stating as follows:

> "Now, in order to award punitive damages, you have to have either actual malice ... or implied malice ... Actual malice exists if the conduct was performed in such a way as to show it was without legal justification or excuse. And it was also influenced by hate, greed or spite, or performed in order to intentionally or deliberately injure or cause damage or loss to another.... Now, in a case like this you can have implied intent or malice. And what is that? The law

---

Code, of property of the merchant from the premises of the merchant."

considers that malice exists in the risk and danger that were known or should have been known at the time. The conduct was performed in such a way as to show it was so reckless and dangerous that it had the disregard for the rights of others, or the conscious disregard for what they did. It is not, I repeat the words, not necessary to show that such conduct was influenced or motivated by hatred. You don't have to show it under implied. You have actual or implied malice. But you don't have to show it was influenced by hatred or spite, or to intentionally injure the plaintiff."

The court did not instruct the jury regarding the basis for an award of punitive damages in an action for false imprisonment.

In addition, the circuit court instructed the jury that the plaintiff's entitlement to punitive damages must be established by clear and convincing evidence, and that the amount of punitive damages must relate to the degree of a defendant's culpability and to a defendant's ability to pay a punitive damages award. With regard to Montgomery Ward's ability to pay any punitive damages awarded, the court commented to the jury that "there's been no evidence in this case of financial condition, but I do take judicial notice that Montgomery Ward is a major corporation, and I think . . . you can do the same." [2]

The defendants objected to the circuit court's instruction that punitive damages could be awarded in a malicious prosecution action on the basis of implied malice. No other objections to the instructions, pertinent to the issues on appeal, were made by the defendants.

During its deliberations, the jury sent a note to the trial judge asking "does lack of probable cause alone indicate malice?" The jury did not say whether its question was directed towards the malice required to establish the tort of malicious prosecution, or towards the malice which the court had described as the possible basis of a punitive damages award. The trial court responded to the jury's question by

---

2. The circuit court had earlier instructed the jury that Montgomery Ward would be responsible for paying any damages awarded against Bresnahan.

repeating its instruction that a lack of probable cause could be some evidence of the malice required for the tort of malicious prosecution.

The special verdict sheet asked the jury to make separate findings on liability with respect to false imprisonment and malicious prosecution. The jury found the defendants liable for both torts. The jury awarded compensatory damages of $15,000. In addition, the jury awarded $45,000 in punitive damages against the defendants.

The defendants filed a motion for judgment notwithstanding the verdict, for a new trial, or for remittitur. They argued that the evidence in the case was insufficient to support the jury verdicts of liability for false imprisonment and malicious prosecution. In addition, the defendants contended that the award of punitive damages must be vacated because the jury had been improperly instructed that it could award punitive damages on the basis of implied malice. Furthermore, Montgomery Ward renewed its contention that any award of punitive damages was improper because the jury had been given no evidence of its financial worth. After a hearing, the circuit court denied the defendants' motion.

The defendants appealed to the Court of Special Appeals, challenging the awards of both compensatory and punitive damages on the same grounds which they had raised in the circuit court. The Court of Special Appeals affirmed. *Montgomery Ward v. Wilson,* 101 Md.App. 535, 647 A.2d 1218 (1994). The intermediate appellate court held that, in light of the conflicting testimony at trial, "there was sufficient evidence of lack of probable cause to warrant submitting this issue to the jury." 101 Md.App. at 545, 647 A.2d at 1223. The appellate court also held that, because malice could be inferred from a lack of probable cause, it had been proper for the trial court to send the issue of malice to the jury. 101 Md.App. at 546, 647 A.2d at 1223.

With respect to the award of punitive damages, after quoting the circuit court's instruction which defined implied malice in terms of disregard for others' rights, the intermediate

appellate court continued as follows (101 Md.App. at 548–549, 647 A.2d at 1225):

"We conclude that the court correctly instructed the jury that a finding of implied malice could support an award of punitive damages in this case. Appellants cite *Owens–Illinois v. Zenobia,* 325 Md. 420, 460, 601 A.2d 633 (1992), for the proposition that punitive damages may not be awarded unless actual malice is shown. *Zenobia* dealt with non-intentional tort actions and, thus, is inapposite. *Id.* at 460 n. 21, 601 A.2d 633. Contrary to appellants' argument, actual malice is not required as a basis for awarding punitive damages in an intentional tort case. Rather, in a malicious prosecution or false arrest case, punitive damages may be recovered where malice may be implied from wantonness or from lack of probable cause. *Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 448–49, 340 A.2d 705 (1975); *See also Montgomery Ward & Co. v. Cliser,* 267 Md. 406, 421, 298 A.2d 16 (1972)...."

While the Court of Special Appeals agreed with Montgomery Ward that the financial condition of the defendant should ordinarily be considered by a jury assessing a possible award of punitive damages, it nonetheless held that Montgomery Ward had not properly preserved its challenge to the punitive damages award on this basis. According to the Court of Special Appeals, since the defendants did not object to the jury instructions concerning Montgomery Ward's standing as a "major corporation," their earlier and subsequent objections to the lack of evidence of financial worth "could not be considered on appeal as an objection to those instructions." 101 Md.App. at 552, 647 A.2d at 1227.

The defendants filed a petition for a writ of certiorari which we granted. 337 Md. 180, 652 A.2d 124 (1995). The defendants contend that there was insufficient evidence of either tort for the case to have been submitted to the jury. Alternatively, they argue that the award of punitive damages must be reversed, both because the jury was instructed that it could award punitive damages on the basis of implied malice, and

because no evidence of Montgomery Ward's worth was introduced at trial.

## II.

We shall first address the defendants' contention that there was insufficient evidence for the count charging malicious prosecution to have gone to the jury. The elements of malicious prosecution were set forth in *Exxon Corp. v. Kelly,* 281 Md. 689, 693, 381 A.2d 1146, 1149 (1978), quoting from *Durante v. Braun,* 263 Md. 685, 688, 284 A.2d 241, 243 (1971), as follows:

> " 'The necessary elements of a case for malicious prosecution of a criminal charge are . . . (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) 'malice', or a primary purpose in instituting the proceeding other than that of bringing an offender to justice.' "

*See also, e.g., Jannenga v. Libernini,* 222 Md. 469, 472, 160 A.2d 795, 797 (1959); *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 174, 122 A.2d 457, 460 (1956); *Delk v. Killen,* 201 Md. 381, 383, 93 A.2d 545, 546 (1953); *Moneyweight Co. v. McCormick,* 109 Md. 170, 180, 72 A. 537, 540 (1909); *Thelin & Balt. & Ohio R.R. Co. v. Dorsey,* 59 Md. 539, 544 (1882); *Boyd v. Cross,* 35 Md. 194, 196 (1872). According to the defendants, the plaintiff's evidence was insufficient to prove both the element of lack of probable cause and the element of malice.[3]

The defendants insist that the trial testimony of Jeffrey Bresnahan, Fuller and Holmes established that the defendants "had ample probable cause to apply for an arrest

---

**3.** The defendants add that "the Plaintiff did not establish that the criminal proceeding terminated in her favor—a second necessary and mandatory element." (Defendants' brief at 9, n. 2). The defendants acquiesced at trial in the circuit court's exclusion of evidence concerning the circumstances surrounding the dismissal of the criminal charges against Wilson. Consequently, we agree with the Court of Special Appeals that the issue of the plaintiff's alleged failure to establish a termination in her favor was not preserved for appellate review.

warrant." (Defendants' brief at 11). The defendants may well be correct that the testimony of Bresnahan, Fuller and Holmes, if uncontroverted, would have established probable cause as a matter of law for the initiation of charges against Wilson. Nevertheless, Wilson testified at trial that she had never made a credit purchase of any kind at Montgomery Ward's store, and, in particular, had never charged merchandise at the store on behalf of any other person. Moreover, Wilson denied that she had told Fuller and Holmes not to tell the loss prevention department about any unauthorized transaction. In light of the verdicts in Wilson's favor, to the extent that there was a conflict between Wilson's testimony and the testimony of other witnesses, we must assume that the jury believed Wilson.

Although Wilson's testimony contradicted the testimony of Fuller and Holmes with regard to Wilson's actions, her testimony did not directly controvert the testimony of Bresnahan, Fuller and Holmes that Bresnahan had been told by both Fuller and Holmes that Wilson had made unauthorized credit card charges. Consequently, Wilson's testimony did not go directly to the issue of whether Bresnahan, based on what he had been told, reasonably believed that Wilson had committed a theft offense. Nonetheless, the plaintiff relied on a theory that Bresnahan lacked probable cause to begin proceedings against Wilson because he failed to perform an adequate investigation into the unauthorized transactions. At the plaintiff's request, the circuit court instructed the jury that "probable cause does not exist if a proper investigation could have cleared the accused." The defendants did not object to this instruction. Nor had the defendants asked the court to rule that, as a matter of law, their investigation was reasonably complete. Thus, under the plaintiff's theory of the case, regardless of the inculpatory information which Bresnahan had received about Wilson, questions about the reasonableness of the subsequent investigation might still justify a finding of lack of probable cause. Inasmuch as the defendants did not take issue with this view of the law, we assume, for purposes of our review, that there was some evidentiary basis from

which the jury could have concluded that Bresnahan did not, in fact, have probable cause to press charges against Wilson, whose testimony the jury obviously credited.

■ The trial court's instructions to the jury with respect to lack of probable cause consisted of a general definition of probable cause. The jury was instructed to apply the definition to the facts as it found them to be, and thus to determine whether or not Bresnahan and Montgomery Ward had probable cause to prosecute Wilson. Under this Court's opinion in *Palmer Ford, Inc. v. Wood*, 298 Md. 484, 507, 471 A.2d 297, 309 (1984), it would appear that the jury in the present case was given too much authority to determine whether there had been probable cause. The Court in *Palmer Ford* discussed, *inter alia*, the respective functions of judge and jury in deciding whether a plaintiff in an action for malicious prosecution has established a lack of probable cause. After a review of Maryland cases discussing the allocation of duties between judge and jury in this regard, Judge Rodowsky, writing for the Court, concluded that Maryland retained the traditional principle set forth by Judge Alvey in *Boyd v. Cross, supra*, 35 Md. 194. Judge Alvey had stated the traditional rule as follows (*Boyd v. Cross, supra*, 35 Md. at 197): "As to the existence of the facts relied on to constitute the want of probable cause, that is a question for the jury; but what will amount to the want of probable cause in any case, is a question of law for the court." Consequently, as this Court in *Palmer Ford* explained, it is ordinarily improper for a trial court to "[furnish] the jury with a legally correct definition of probable cause which the jury is then to apply to the facts as the jury finds them to be." 298 Md. at 503, 471 A.2d at 307. Rather, the court should explain to the jury whether or not probable cause exists under the various factual scenarios which may be generated by the evidence.

The circuit court in the present case merely defined probable cause for the jury and left it to the jury to determine whether the plaintiff had established a lack of probable cause. The defendants, however, neither objected to the jury instruc-

tions on probable cause nor objected to the plaintiff's theory that lack of probable cause could be established by evidence that Bresnahan's investigation was inadequate. Under these circumstances, and in view of the conflicting testimony at trial, we shall not overturn the verdict under the malicious prosecution count on the ground that there was insufficient evidence of lack of probable cause.

■ In addition, the defendants argue that the plaintiff introduced no evidence of malice. The defendants insist that their own evidence established a lack of malice because "any illusory evidence of malice [put on by the plaintiff] was more than rebutted by the eye witness testimony . . . and a lengthy investigation." (Defendants' brief at 9). The defendants' position overlooks the fact that the jury apparently believed the plaintiff's witnesses and disbelieved some of the testimony on behalf of the defendants. Moreover, the defendants' argument ignores the principle that the "malice" element of malicious prosecution may be proven by inference from a lack of probable cause.

■ In early cases, as well as more recent ones, this Court has taken the position that the "malice" element of malicious prosecution may be inferred from a lack of probable cause. *See, e.g., Exxon Corp. v. Kelly, supra,* 281 Md. at 670, 381 A.2d at 1152–1153; *Jannenga v. Libernini, supra,* 222 Md. at 474, 160 A.2d at 798; *Banks v. Montgomery Ward & Co., supra,* 212 Md. at 42, 128 A.2d at 606; *Goldstein v. Rau,* 147 Md. 6, 13, 127 A. 488, 491 (1925); *Stansbury v. Fogle,* 37 Md. 369, 371 (1873); *Turner v. Walker,* 3 G. & J. 377, 386 (1831). Accordingly, a plaintiff who has generated sufficient evidence of lack of probable cause to send the case to the jury is also entitled to have the jury consider the issue of malice. Judge J. Dudley Digges explained the applicable principles for the Court in *Exxon Corp. v. Kelly, supra,* 281 Md. at 700, 381 A.2d at 1152–1153:

"It is true that since malice and lack of probable cause must concur in order to maintain an action for malicious prosecution, see *Boyd v. Cross,* 35 Md. 194, 196–97 (1872), the

verdict cannot stand, whatever may be the conclusion as to probable cause, absent a showing of malice. As our predecessors have observed, however 'of these two indispensable elements the want of probable cause is the more important, *because if it be established by the proof, malice may be inferred.*' *Owens v. Graetzel,* 149 Md. 689, 696, 132 A. 265, 267 (1926). . . . Since we have repeatedly stated that the question of malice whether the defendant acted from other than proper motives 'unlike probable cause, is a question for the jury,' *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 42, 128 A.2d 600, 606 (1957); *Jannenga v. Libernini,* 222 Md. 469, 474, 160 A.2d 795, 798 (1960) (citing cases), and since, as we have just discussed, 'lack of probable cause may give rise to an inference of malice, sufficient to carry the question to the jury,' . . . it follows ineluctably that if the jury is permitted under the evidence here to find a lack of probable cause, as we have already decided it may, it may also, if it chooses, infer the existence of malice."

▇▇▇ Nonetheless, it is equally clear from our cases that the "malice" required for malicious prosecution consists of a wrongful or improper motive in initiating legal proceedings against the plaintiff. In *Johns v. Marsh,* 52 Md. 323, 332–333 (1879), Judge Alvey, writing for the Court, explained the meaning of "malice" in the context of an action for malicious prosecution:

"[A]ny motive other than that of instituting the prosecution for the purpose of bringing the party to justice, is a malicious motive on the part of the person who acts under the influence of it. As was accurately stated by Mr. Justice Parke, afterwards Baron Parke, in the case of *Mitchell v. Jenkins,* 5 B. & Ad. 594, 'the term "malice," in this form of action, is not to be considered in the sense of spite or hatred against an individual, but of *malus animus,* and as denoting that the party is actuated by improper and indirect motives.' If, for example, a prosecution is initiated upon weak and unsubstantial ground for purposes of annoyance, or of frightening and coercing the party prosecuted into the settlement of a demand, the surrender of goods, or for the

accomplishment of any other object, aside from the apparent object of the prosecution and the vindication of public justice, the party who puts the criminal law in motion under such circumstances lays himself open to the charge of being actuated by malice. Such motives are indirect and improper, and for the gratification of which the criminal law should not be made the instrument."

More recently, we reiterated that "[m]alice in this context means that the party was actuated by an improper motive, and proof of malice does not require evidence of spite, hatred, personal enmity or a desire for revenge." *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 408 n. 7, 494 A.2d 200, 205 n. 7 (1985). *See also, e.g., Exxon Corp. v. Kelly, supra,* 281 Md. at 701, 381 A.2d at 1153 ("a purpose other than that of bringing an offender to justice"); *Krashes v. White,* 275 Md. 549, 554, 341 A.2d 798, 801 (1975) ("'a primary purpose in instituting the proceeding other than that of bringing an offender to justice'"); *Durante v. Braun, supra,* 263 Md. at 691, 284 A.2d at 243; *Jannenga v. Libernini, supra,* 222 Md. at 473, 160 A.2d at 797 (circumstances pointed to "some private end instead of to a proper public motive"); *Banks v. Montgomery Ward & Co., supra,* 212 Md. at 42, 128 A.2d at 606; *Moneyweight v. McCormick, supra,* 109 Md. at 180, 72 A. at 540; *Torsch v. Dell,* 88 Md. 459, 468, 41 A. 903, 906 (1898) (malice is "not to be regarded as merely a feeling of spite and hatred towards the individual, but as being any such mind that denotes that the party is actuated by improper ... motives"); *Cooper v. Utterbach,* 37 Md. 282, 315 (1873).

■ Thus, in malicious prosecution actions, the plaintiff must establish that the defendant committed the tort with some improper purpose or motive. Mere negligence in instituting unjustified criminal proceedings against the plaintiff cannot satisfy the "malice" element.

■ In the present case, while the circuit court instructed the jury that "malice" within the meaning of the malicious prosecution tort was a "purpose in starting a prosecution ...

other than bringing the offender to justice," the court alternatively instructed the jury as follows:

> "In a case like this, you can have implied ... malice. And what is that? The law considers that malice exists in the risk and danger that were known or should have been known at the time. The conduct was performed in such a way as to show it was ... reckless and ... dangerous...."

Under the circumstances of the present case, this instruction may have invited the jury to find Bresnahan and Montgomery Ward liable for malicious prosecution if it found that Bresnahan had negligently instituted criminal proceedings against Wilson without probable cause, even though Bresnahan's and Montgomery Ward's motive may have simply been to bring a wrongdoer to justice. As instructed by the trial court, the jury was permitted to determine whether probable cause for the filing of charges existed, and then to infer "malice" from the lack of probable cause, where "malice" was alternatively defined in terms of recklessness. The defendants, however, did not object to the trial court's instructions giving the jury authority to decide whether or not probable cause existed for the prosecution. Neither did they object on the ground that the trial court's instructions with respect to malice incorrectly defined the "malice" which was required to support liability under the malicious prosecution count.

Although the jury was improperly permitted to base a finding of liability for malicious prosecution on "malice" which was alternatively defined as recklessness, the defendants' failure to object requires affirmance of the award of compensatory damages under the malicious prosecution count.

### III.

■ In their challenge to the jury verdict on false imprisonment, the defendants argue that "where a person is arrested by law enforcement personnel pursuant to a valid arrest warrant, no civil action for false arrest exists—even if the person arrested was innocent." (Defendants' brief at 10–11.) We agree with the defendants that the tort of false imprison-

ment does not lie where the sole basis for the tort action is an arrest made by a police officer pursuant to a warrant which appears on its face to be valid.

Judge J. Dudley Digges for the Court set forth the elements of false imprisonment in *Great Atl. & Pac. Tea Co. v. Paul,* 256 Md. 643, 654, 261 A.2d 731, 738 (1970), as follows: "the necessary elements of a case for false imprisonment are a deprivation of the liberty of another without his consent and without legal justification." *See also, e.g., Fine v. Kolodny,* 263 Md. 647, 651, 284 A.2d 409, 411 (1971), *cert. denied,* 406 U.S. 928, 92 S.Ct. 1803, 32 L.Ed.2d 129 (1972); *Safeway Stores, Inc. v. Barrack, supra,* 210 Md. at 173, 122 A.2d at 460; *Dorsey v. Winters,* 143 Md. 399, 410–411, 122 A. 257, 261 (1923); *Fleisher v. Ensminger,* 140 Md. 604, 620, 118 A. 153, 159 (1922); *Lewin v. Uzuber,* 65 Md. 341, 348–349, 4 A. 285, 289 (1886); *Mitchell v. Lemon,* 34 Md. 176, 180 (1871). As we recently stated in *Ashton v. Brown,* 339 Md. 70, 660 A.2d 447 (1995), a police officer carrying out either an arrest under warrant or a warrantless arrest is not liable for false imprisonment in connection with that arrest if the officer had legal authority to arrest under the circumstances. Again quoting from *Great Atl. & Pac. Tea Co. v. Paul, supra,* 256 Md. at 655, 261 A.2d at 738, we explained in *Ashton* the meaning of "legal justification" in the context of false imprisonment (339 Md. at 120, 660 A.2d at 472):

" 'When the cases speak of legal justification, we read this as equivalent to legal authority.... Whatever technical distinction there may be between an "arrest" and a "detention" the test whether legal justification existed in a particular case has been judged by the principles applicable to the law of arrest.' "

Therefore, where the basis of a false imprisonment action is an arrest by a police officer, the liability of the police officer for false imprisonment will ordinarily depend upon whether or not the officer acted within his legal authority to arrest.

Different considerations apply where the defendant in the false imprisonment action is not a police officer, but is a

private party who instigated the allegedly wrongful arrest. With respect to warrantless arrests, if a person wrongfully procures another's arrest without probable cause, for example by falsely informing a police officer that the factual basis for a warrantless arrest exists, then the tort of false imprisonment may lie against the instigator even though the police officer would not be liable for false imprisonment. One legal scholar has described the applicable principles as follows (Fowler V. Harper, *Malicious Prosecution, False Imprisonment & Defamation*, 15 Texas L.Rev. 157, 163–164 (1937)):

> "Ordinarily one who intentionally causes the confinement of another by inducing a third person to do so is subject to the same liability as though he himself had confined or imprisoned the other. This principle is applied where a citizen induces a police officer to arrest another without warrant by direction or on request or on a charge of crime which he knows to be without foundation. The officer is not liable if the arrest is lawful as it ordinarily will be when the crime charged is a felony, the citizen is apparently a credible person and there is apparently no reason to doubt him. The officer under such circumstances has reasonable ground to believe that the person accused has committed a felony and he may therefore arrest without a warrant. But while the officer is not liable, the citizen who thus causes the unjustified arrest is liable."

*See also, e.g., Drug Fair v. Smith*, 263 Md. 341, 283 A.2d 392 (1971); *Safeway Stores v. Barrack, supra*, 210 Md. 168, 122 A.2d 457; *Dennis v. Baltimore Transit Co.*, 189 Md. 610, 56 A.2d 813 (1948); Prosser, *Law of Torts*, § 11 at 47 n. 97 (4th ed. 1971) ("one who knowingly gives false information to a police officer becomes liable for the [warrantless] false arrest"); Annotation, *False Imprisonment: Liability of Private Citizen for False Arrest by Officer*, § 20 at 688 ("an arrest may be rightful as to the officer but wrongful if attributed to the citizen who procures him to make it").

In addition to liability for the detention caused by a formal arrest itself, a private party may incur liability for false imprisonment by wrongfully detaining an individual while

waiting for the police to arrive and make a formal arrest. *See, e.g., Caldor v. Bowden, supra,* 330 Md. 632, 625 A.2d 959; *Drug Fair v. Smith, supra,* 263 Md. 341, 283 A.2d 392; *Safeway Stores v. Barrack, supra,* 210 Md. 168, 122 A.2d 457; *Dennis v. Baltimore Transit Co., supra,* 189 Md. 610, 56 A.2d 813.

 Relying upon the reasoning applicable to warrantless arrests, the Court of Special Appeals has stated in actions where the plaintiff was arrested under a facially valid warrant that "one who knowingly gives false information to an arresting officer becomes liable [for false imprisonment] when such information is a determining factor in the decision to make an arrest." *Newton v. Spence,* 20 Md.App. 126, 136, 316 A.2d 837, 843, *cert. denied,* 271 Md. 741 (1974). *See also Kairys v. Douglas Stereo,* 83 Md.App. 667, 683–684, 577 A.2d 386, 393 (1990); *K–Mart Corp. v. Salmon,* 76 Md.App. 568, 583–585, 547 A.2d 1069, 1077 (1988), *cert. denied,* 314 Md. 496, 551 A.2d 867 (1989).

Contrary to the position of the Court of Special Appeals, however, while a third party who wrongfully instigates another's *warrantless* arrest may be liable for false imprisonment, the false imprisonment tort does not lie against either the instigator or the arresting officer where the plaintiff is not detained by the instigator and is arrested by a police officer pursuant to a facially valid warrant. Rather, to the extent that the instigator acts maliciously to secure the warrant for the plaintiff's arrest, the plaintiff's cause of action against the instigator is malicious prosecution. *See Lewin v. Uzuber, supra,* 65 Md. at 347–349, 4 A. at 288–290; *Broughton v. State,* 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 94, 335 N.E.2d 310, 314, *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975) ("the distinction between false imprisonment and malicious prosecution in the area of arrest depends on whether or not the arrest was made pursuant to a warrant").

Traditionally at common law, actions of malicious prosecution and false imprisonment have been directed at different interests. "False imprisonment is the invasion of the interest

in freedom from unlawful confinement, while a malicious prosecution is the unlawful use of legal procedure to bring about a legal confinement." Harper, James & Gray, *The Law of Torts* § 3.9 at 297 (2d ed. 1986). *See also Safeway Stores, Inc. v. Barrack, supra,* 210 Md. at 174, 122 A.2d at 460 ("The chief distinction between [false imprisonment and malicious prosecution] lies in the existence of valid legal authority for the restraint imposed"); *Lewin v. Uzuber, supra,* 65 Md. at 348, 4 A. at 289 ("[false imprisonment] can be maintained only when the arrest is made without legal process; and [malicious prosecution] where the process of the law has been perverted and improperly used"). A person who procures a facially valid warrant for another's arrest thereby initiates legal process against the person to be arrested. *See* Harper, *supra,* 15 Tex.L.Rev. at 167 (a citizen who procures a warrant by making a formal charge before a magistrate "set[s] in motion the machinery of the law against the other in the name and on behalf of the public"). *See also Lewin v. Uzuber, supra,* 65 Md. at 348–349, 4 A. at 289; *Burt v. Ferrese,* 871 F.2d 14, 17 (3d Cir.1989) (applying Delaware law); *Broughton v. State, supra,* 37 N.Y.2d at 458, 373 N.Y.S.2d at 94, 335 N.E.2d at 314; Prosser, *supra,* at 836. Consequently, while procuring a warrantless arrest by giving false information to a police officer may constitute false imprisonment, falsely procuring an arrest through wrongfully obtaining a warrant is ordinarily malicious prosecution.

In *West v. Smallwood,* 3 M. & W. 418, 150 E.R. 1208 (Exch. of Pleas, 1838), the plaintiff alleged that his arrest under a warrant constituted the tort of false imprisonment because the defendant had improperly procured the warrant from a magistrate. The court rejected the plaintiff's argument, and distinguished the case from earlier cases which had allowed recovery in false imprisonment against the instigators of warrantless arrests performed by sheriffs (3 M. & W. at 420, 150 E.R. at 1209):

> "With regard to the case of the sheriff, that is clearly distinguishable from the present, because the party puts the sheriff in motion, and the latter acts in obedience to him.

In the case of an act done by a magistrate, the complainant does no more than lay before a Court of competent jurisdiction the grounds on which he seeks redress, and the magistrate, erroneously thinking that he has authority, grants a warrant.... If any malice could be shown, it might have formed the ground of an action on the case."[4]

By invoking the machinery of the independent judicial system, therefore, the wrongdoer insulates himself from liability for false imprisonment. By the same token, however, he may become liable for malicious prosecution.

Prosser summarizes the distinction between malicious prosecution and false imprisonment as follows (*Law of Torts, supra,* § 12 at 49):

"Malicious prosecution is the groundless institution of criminal proceedings against the plaintiff. False imprisonment fell within the action of trespass, as a direct interference with the plaintiff's person, while malicious prosecution was regarded as more indirect, and the remedy for it was an action on the case. The distinction between the two lies in the existence of valid legal authority for the restraint imposed. If the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, so that the arrest of the plaintiff is legally authorized, the court and its officers are not his agents to make the arrest, and their acts are those of the law and the state, and not to be imputed to him. He is therefore liable, if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose. The action must be for malicious prosecution, upon proof of malice and want of probable cause, as well as termination of the proceeding in favor of the plaintiff."

Likewise, the Restatement (Second) of Torts, in setting forth the elements of false imprisonment, carefully restricts

---

4. Under the principles of common law pleading, false imprisonment was a suit in trespass, while malicious prosecution was an action on the case. *See Lewin v. Uzuber,* 65 Md. 341, 348, 4 A. 285, 289 (1886); Poe, *Pleading & Practice,* § 230 (Tiffany ed. 1925).

the scope of that tort as follows: "an act which makes the actor liable under this Section for a confinement *otherwise than by arrest under a valid process* is customarily called a false imprisonment." Restatement (Second) of Torts, § 35, comment (a) (1971). In addition, the Restatement comments specifically upon the liability of instigators and participants in false imprisonment cases, stating generally in § 45A that "[o]ne who instigates or participates in the unlawful confinement of another is subject to liability for false imprisonment." In this connection, the Restatement further states as follows (§ 45A, comment (b)):

> "In order for this Section to be applicable to an arrest, it must be a false arrest, made without legal authority. One who instigates or participates in a lawful arrest, as for example an arrest made under a properly issued warrant by an officer charged with the duty of enforcing it, may become liable for malicious prosecution ... or for abuse of process ... but he is not liable for false imprisonment...."

*See also Erp v. Carroll,* 438 So.2d 31, 39–40 (1983); *Mullen v. Brown,* 138 Mass. 114, 115 (1884); *Thomas v. M.R.A.,* 713 S.W.2d 570, 574–575 (Mo.App.1986); *Genito v. Rabinowitz,* 93 N.J.Super. 225, 225 A.2d 590 (1966); *Tredway v. Birks,* 59 S.D. 649, 653, 242 N.W. 590, 591–592 (1932). *See generally* Annotation: *False Imprisonment: Liability of Private Citizen for False Arrest by Officer,* 21 A.L.R.2d 643 (1952); Harper, James & Gray, *supra,* § 3.9 at 297.

While this Court has not had occasion to render an actual holding with regard to the nonliability for false imprisonment of a private party wrongfully procuring the plaintiff's arrest pursuant to a facially valid warrant, the language in our cases is fully in accord with the established rule that the tort does not lie. *See Safeway Stores, Inc. v. Barrack, supra,* 210 Md. at 174, 122 A.2d at 460; *Lewin v. Uzuber, supra,* 65 Md. at 347–349, 4 A. at 288–290 (discussing the issue in detail). *See also* Poe, *Pleading & Practice,* § 230 (Tiffany ed. 1925).

Consequently, the tort of false imprisonment does not lie against an individual who wrongfully procures the plaintiff's

arrest, where there was no detention prior to the issuance of an arrest warrant, and where the arrest is made by a police officer executing a facially valid arrest warrant. To the extent that decisions of the Court of Special Appeals are inconsistent with this principle, they are hereby overruled.

As previously discussed, although a false imprisonment action will not lie when the plaintiff was arrested by a police officer under a facially valid warrant wrongfully procured by a third party, a malicious prosecution action against the third party will lie if the latter acted out of malice, *i.e.,* acted from a wrongful or improper motive. Furthermore, if in this situation there was no malice, but the third party procured the warrant as a result of negligence, the wrongfully arrested plaintiff may recover damages from the procurer in an action for negligence. *See Ortiz v. County of Hampden,* 16 Mass.App. 138, 449 N.E.2d 1227 (1983) (reversing the dismissal of the plaintiff's negligence count where the plaintiff alleged that the defendant's negligent record-keeping resulted in his arrest and imprisonment under a facially valid warrant). *See also Baggett v. National Bank & Trust Co.,* 174 Ga.App. 346, 330 S.E.2d 108 (1985); *Oden & Sims Used Cars, Inc. v. Thurman,* 165 Ga.App. 500, 301 S.E.2d 673 (1983).

In the present case, Wilson at no time challenged the facial validity of the warrant issued for her arrest by the District Court commissioner. Moreover, Wilson based her false imprisonment cause of action solely on her arrest pursuant to the warrant. She did not contend that the questioning of her during the investigation into the unauthorized credit charges constituted a detention without her consent. Under these circumstances, the defendants could incur no liability for false imprisonment for their part in instigating Wilson's arrest pursuant to a facially valid warrant. Thus, we agree with the defendants that the count charging false imprisonment was improperly submitted to the jury.

## IV.

The defendants also challenge the award of punitive damages against them. They argue that the circuit court improp-

erly permitted the jury to award punitive damages based on "implied malice" rather than on "actual malice." [5] In addition,

---

**5.** In this opinion we join the parties and the Court of Special Appeals in using the term "actual malice" to refer to conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will or fraud, which we have held will support an award of punitive damages in Maryland. *See Ellerin v. Fairfax Savings*, 337 Md. 216, 652 A.2d 1117 (1995); *Komornik v. Sparks*, 331 Md. 720, 725, 629 A.2d 721, 723 (1993); *Adams v. Coates*, 331 Md. 1, 13, 626 A.2d 36, 42 (1993); *Owens–Illinois v. Zenobia*, 325 Md. 420, 455–460, 601 A.2d 633, 649–653 (1992), and cases there cited. Nonetheless, as we stated in *Zenobia*, 325 Md. at 460 n. 20, 601 A.2d at 652 n. 20, in light of the various meanings ascribed to the expression in the law and in popular usage, it would be preferable for trial judges to frame their jury instructions without using the term "actual malice."

The term "implied malice" has been used in two different senses in our cases involving the availability of punitive damages in tort actions. In *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 297 A.2d 721 (1972), the Court permitted punitive damages to be recovered on the basis of "implied malice" defined as "gross negligence" involving "wanton or reckless disregard." 267 Md. at 167, 297 A.2d at 731. It appears that the circuit court in the present case based its jury instructions in part upon this concept of "implied malice," and the Court of Special Appeals affirmed, adopting the trial court's definition. Nevertheless, "implied malice" in the sense of gross negligence has been used in our cases only with regard to non-intentional torts.

In *Owens–Illinois v. Zenobia, supra*, 325 Md. at 460, 601 A.2d at 652, we overruled *Smith v. Gray Concrete Pipe Co.* and held that punitive damages in any non-intentional tort action must be based upon proof that the defendant's conduct was characterized by actual malice. *Zenobia* recognized that the "implied malice" standard set forth in *Smith v. Gray Concrete Pipe Co.* was inconsistent with the policies and purpose behind punitive damages awards in Maryland. Moreover, it is doubtful whether the expression "implied malice" appropriately describes any state of mind which could be "implied" or "inferred" from negligent conduct. In popular usage "malice" connotes some consciousness of wrongdoing, or an evil motive or purpose. Webster's Third New International Dictionary (1981), for example, defines "malice" as follows:

> "intention or desire to harm another usu[ally] seriously through doing something unlawful or otherwise unjustified; willfulness in the commission of a wrong; evil intention."

Even at its most egregious, negligence is non-intentional tortious behavior. As we explained in *Komornik v. Sparks, supra*, 331 Md. at 724–731, 629 A.2d at 723–726, the state of mind which characterizes negligence ordinarily involves no awareness of wrongdoing and no evil intent. Consequently, "implied malice" in the sense of gross negligence can no longer form the basis of any punitive damages award in Maryland, regardless of the nature of the underlying tort.

they contend that any award of punitive damages in Maryland must be predicated upon evidence of the defendant's financial condition.

In upholding the award of punitive damages in the present case, the Court of Special Appeals stated that "actual malice is not required as a basis for awarding punitive damages in an intentional tort case. Rather, in a malicious prosecution or false arrest case, punitive damages may be recovered where malice may be implied from wantonness or from lack of probable cause. *Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 448–49, 340 A.2d 705 (1975)." *Montgomery Ward v. Wilson, supra,* 101 Md.App. at 549, 647 A.2d at 1218. The defendants contend that if, under existing Maryland common law, punitive damages may be awarded in a malicious prosecution or false imprisonment action on the basis of implied malice, this Court should modify the common law and hold, instead, that punitive damages are only available in malicious prosecution and false imprisonment actions where the defendants committed the torts with "actual malice."

## A.

Preliminarily, our holding that the false imprisonment count should not have been submitted to the jury removes false imprisonment as a basis for the punitive damages award.

---

In *Ellerin v. Fairfax Savings, supra,* 337 Md. at 228 n. 8, 652 A.2d at 1123 n. 8, we noted that "the term 'implied malice' has also been used with regard to the availability of punitive damages in certain types of tort cases which have allowed 'malice' to be 'implied' from another element of the tort," *i.e.,* malicious prosecution actions. It appears that in this context, too, the term "implied malice" is somewhat inaccurate. It refers not to a relationship between the elements of the malicious prosecution tort, whereby "malice" is implicit in the other elements of the tort, but to the fact that a jury is permitted to infer the malice required to establish the tort from proof of lack of probable cause. Thus, the concept of "implied malice" describes a method of proof, rather than a particular mental state. The term "inferred malice" would probably convey this concept more accurately. We will in this opinion use the term "implied malice" to refer to that malice which forms an element of the malicious prosecution tort, and which, under our prior cases, can be inferred from evidence of a lack of probable cause to institute proceedings against the plaintiff.

Since an award of compensatory damages must underlie any award of punitive damages in Maryland, no punitive damages may be awarded in the present case based upon false imprisonment. *See Caldor v. Bowden, supra,* 330 Md. at 660–664, 625 A.2d at 972–974, and cases there cited.

■■■ Moreover, even if we had upheld the award of compensatory damages under the false imprisonment count, we do not agree with the courts below that punitive damages are recoverable in a false imprisonment or false arrest action based on "implied malice."

Historically in Maryland, punitive damages could be recovered for false imprisonment only where the tort was committed with so-called "actual malice," *i.e.* where there was a showing of intent to injure, ill will or spite, evil motive, fraud, or knowing wrongdoing. *See, e.g., D.C. Transit System v. Brooks,* 264 Md. 578, 583–584, 287 A.2d 251, 254 (1972); *Great Atl. & Pac. Tea Co. v. Paul, supra,* 256 Md. at 657, 261 A.2d at 739–740; *Dennis v. Baltimore Transit Co., supra,* 189 Md. at 617, 56 A.2d at 816–817; *Fleisher v. Ensminger,* 140 Md. 604, 609, 620, 118 A. 153, 155, 159 (1922). *See also Clark's Park v. Hranicka,* 246 Md. 178, 187, 227 A.2d 726, 731 (1967).

In *Montgomery Ward & Co. v. Cliser,* 267 Md. 406, 298 A.2d 16 (1972), however, the Court in dictum suggested that the legislation now codified at § 5–307 of the Courts & Judicial Proceedings Article, which provides that a merchant shall not be held "civilly liable for detention, slander, malicious prosecution, false imprisonment, or false arrest" if the merchant had probable cause to believe that the plaintiff committed a theft crime, may have changed the standard for the allowability of punitive damages in false imprisonment cases. Commenting that "malice can be implied from want of probable cause," and citing malicious prosecution cases, the Court stated that "it would now seem possible to recover punitive damages in a false arrest case without proof of actual malice." 267 Md. at 421, 298 A.2d at 25.

In our view, however, the dictum in the *Cliser* case was unfortunate and was unsupported by the language or purpose

of § 5–307. Section 5–307 did not generally change the elements of the tort actions mentioned in the statute. As recently as two months ago, in *Ashton v. Brown, supra,* 339 Md. at 120, 660 A.2d at 472, this Court reiterated that lack of probable cause, while pertinent in some false imprisonment actions, is not an element of the false imprisonment tort. Rather the elements of the tort are, and have traditionally been, the deprivation of the plaintiff's liberty, without his consent, and without legal justification. *Ashton v. Brown, supra,* 339 Md. at 119, 660 A.2d at 471.

Section 5–307 of the Courts and Judicial Proceedings Article, instead of changing the elements of various tort actions, was simply designed, for reasons of fairness and public policy, to insulate a particular category of defendants from specified tort liability when they had probable cause to believe that the plaintiff had committed theft. The statute was obviously designed to offer an additional protection to merchants and their employees under certain circumstances, rather than to make it easier for plaintiffs to recover damages. Nothing in the statutory language suggests a purpose of making it easier for plaintiffs to recover punitive damages in false imprisonment actions.

The Court of Special Appeals in the present case principally relied on *Montgomery Ward & Co. v. Keulemans, supra,* 275 Md. 441, 340 A.2d 705, in holding, *inter alia,* that "in a ... false arrest case, punitive damages may be recovered where malice may be implied from wantonness or from lack of probable cause." 101 Md.App. at 549, 647 A.2d at 1225. In *Keulemans,* however, the punitive damages award was under the count charging malicious prosecution and not under the count charging false imprisonment or false arrest. The jury had refused to award punitive damages for false arrest, and its action was not challenged on appeal. This Court's discussion and decision upholding the punitive damages award related entirely to malicious prosecution and not false arrest or false imprisonment.

Under this Court's decisions in false imprisonment actions, punitive damages are recoverable only on the basis of "actual malice." The circuit court and the Court of Special Appeals erred in holding to the contrary.

## B.

It is true, however, that punitive damages awards traditionally have been upheld in malicious prosecution actions in Maryland on the basis of jury instructions permitting malice to be inferred from a lack of probable cause. In *Stansbury v. Fogle, supra,* 37 Md. at 370, a malicious prosecution case, the trial court instructed the jury that it might "infer that the defendant was actuated by malice" in procuring the plaintiff's prosecution if it believed that the defendant had instituted proceedings against the plaintiff without probable cause. In addition, the court instructed the jury that, if it found for the plaintiff, it might award "exemplary or punitive damages." 37 Md. at 382. This Court upheld an award of punitive damages in the case, reasoning that the jury verdict on liability necessarily "included the finding upon the whole evidence, that the defendant in instituting or causing the institution of the prosecution *was actuated by malice." Ibid.*

Later, in *McNamara v. Pabst,* 137 Md. 468, 473, 112 A. 812, 814 (1921), a defendant found liable for punitive damages in a malicious prosecution action challenged the trial court's instructions on the ground that they did not "require of the jury, that, as a condition precedent to the award of punitive damages, malice must be found on the part of the defendants." This Court upheld the punitive damages award, since "in suits for malicious prosecution ... 'the gravamen of the action is malice.'" *Ibid.*

More recently, in *Safeway Stores, Inc. v. Barrack, supra,* 210 Md. at 177, 122 A.2d at 462, this Court rejected the defendant's argument that "punitive damages could not be found without a showing of 'actual or express' malice." Relying on *McNamara v. Pabst, supra,* the Court held that "such a finding would be implicit in a verdict for the plaintiff, which

would necessarily include a finding of malice." 210 Md. at 176, 122 A.2d at 461. *See also Montgomery Ward & Co. v. Keulemans, supra,* 275 Md. at 448–449, 340 A.2d at 709–710. *But see First Nat'l Bank v. Todd,* 283 Md. 251, 256, 389 A.2d 371, 374 (1978) (recognizing that Maryland's standard "may not be the majority rule"). Thus, it seems that punitive damages have traditionally been recoverable in Maryland on the basis of the "malice" which may be inferred in a malicious prosecution case from a lack of probable cause for the prosecution.

The defendants in the present case point out, however, that in a number of recent decisions this Court has clarified and modified the standards for the allowability of punitive damages in tort cases. With respect to both intentional and non-intentional torts, we have held that an award of punitive damages generally must be based upon actual malice, in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud. *See, e.g., Ellerin v. Fairfax Savings,* 337 Md. 216, 652 A.2d 1117 (1995); *Komornik v. Sparks,* 331 Md. 720, 725, 629 A.2d 721, 723 (1993); *Adams v. Coates,* 331 Md. 1, 13, 626 A.2d 36, 42 (1993); *Owens–Illinois v. Zenobia, supra,* 325 Md. at 454, 601 A.2d at 649–650. *See also Alexander v. Evander,* 336 Md. 635, 650 A.2d 260 (1994). In these cases, the Court has been guided by the traditional policy and purpose of punitive damages in Maryland, which have been "articulated in our cases for over a century." *Ellerin v. Fairfax Savings, supra,* 337 Md. at 227, 652 A.2d at 1122, citing *Phil., Wilm. & Balt. Railroad Co. v. Hoeflich,* 62 Md. 300, 304 (1884). In *Owens–Illinois v. Zenobia, supra,* 325 Md. at 454, 601 A.2d at 650, we summarized the purpose underlying punitive damages awards as follows:

"[P]unitive damages are awarded in an attempt to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability."

Furthermore, we have required that "in *any* tort case a plaintiff must establish by clear and convincing evidence the basis for an award of punitive damages." *Owens–Illinois v.*

*Zenobia, supra,* 325 Md. at 469, 601 A.2d at 657. In *Zenobia* the Court recognized that punitive damages may only be awarded on the basis of tortious conduct which is particularly heinous, egregious and reprehensible. 325 Md. at 454, 601 A.2d at 649–650.[6] We concluded in *Zenobia,* 325 Md. at 469, 601 A.2d at 657, that

> "[u]se of a clear and convincing standard of proof will help to insure that punitive damages are properly awarded. We hold that this heightened standard is appropriate in the assessment of punitive damages because of their penal nature and potential for debilitating harm."

As earlier discussed, for the purposes of the malicious prosecution tort, "malice" consists of an improper or wrongful motive in causing the initiation of criminal proceedings against the plaintiff. It is a motive or purpose other than bringing to justice one who violated the criminal law. *See, e.g., Keys v. Chrysler Credit Corp., supra,* 303 Md. at 408 n. 7, 494 A.2d at 205 n. 7; *Exxon Corp. v. Kelly, supra,* 281 Md. at 701, 381 A.2d at 1153; *Krashes v. White, supra,* 275 Md. at 554, 341 A.2d at 801; *Johns v. Marsh, supra,* 52 Md. at 332–333; *Cooper v. Utterbach, supra,* 37 Md. at 315. *See also Delk v. Killen, supra,* 201 Md. at 383, 93 A.2d at 546 ("[t]he gist of the action is the putting of legal process in operation for the mere purpose of vexation or injury"); *Boyd v. Cross, supra,* 35 Md. at 197 (malice and want of probable cause may be established where "the accuser had no ground for proceeding but his desire to injure the accused"). Consequently, the wrongful motivation or purpose which forms the "malice" element of malicious prosecution involves a state of mind and wrongful conduct which may justify a punitive damages award.

Nevertheless, our cases have permitted the element of "malice" in a malicious prosecution action to be proven by inference from a lack of probable cause for prosecuting the

---

6. As this Court has recently reiterated, " '[p]unitive damages, in essence, represent a civil fine.' " *Ellerin v. Fairfax Savings,* 337 Md. 216, 242 n. 13, 652 A.2d 1117, 1130 n. 13 (1995), quoting *Embrey v. Holly,* 293 Md. 128, 142, 442 A.2d 966, 973 (1982).

plaintiff. Under certain circumstances, the validity of inferring a wrongful motive from lack of probable cause may be questionable. Since lack of probable cause to institute a prosecution might result from negligence, the lack of probable cause does not necessarily indicate a wrongful motive.[7] In the present case, for example, the plaintiff's theory regarding Bresnahan's lack of probable cause was that his investigation was inadequate. Inadequacy of investigation does not mean that Bresnahan's motive was anything other than bringing a thief to justice.

As pointed out above, since the opinion in *Owens–Illinois v. Zenobia, supra,* 325 Md. at 469, 601 A.2d at 657, a plaintiff must establish by clear and convincing evidence the basis for any award of punitive damages. Permitting a wrongful motive to be inferred from a lack of probable cause is not consonant with this "clear and convincing" standard of proof. Furthermore, permitting punitive damages to be assessed on the basis of such "implied malice" is not consistent with our recent cases holding generally that punitive damages should only be awarded where there exists heinous conduct, characterized by fraud, ill will, spite, evil motive, conscious wrongdoing, or intent to injure. *See Ellerin v. Fairfax Savings, supra,* 337 Md. at 227, 652 A.2d at 1122; *Komornik v. Sparks, supra,* 331 Md. at 725, 629 A.2d at 723; *Adams v. Coates, supra,* 331 Md. at 13, 626 A.2d at 42.

Henceforth, for punitive damages to be allowable in malicious prosecution actions, a plaintiff must establish by clear and convincing evidence the defendant's wrongful or improper motive for instigating the prosecution. Although the jury may draw an inference of such motive from lack of probable cause

---

7. In explaining that the inference from lack of probable cause to malice in a malicious prosecution action is permissive, rather than mandatory, John Prentiss Poe stated that "cases may readily be imagined where groundless charges, and also charges without any reasonable or probable cause, may be laid in perfect honesty and good faith, and without any malicious or rancorous feeling or improper motives, or, indeed, any consciousness of wrongdoing." Poe, *Pleading & Practice, supra,* § 196, at 148.

for purposes of compensatory damages, it may not rely on the inference in considering punitive damages. As with similar modifications of common law principles, this change applies to the instant case and to all trials commencing on or after the date this opinion is filed. *Owens–Illinois v. Zenobia, supra,* 325 Md. at 470, 601 A.2d at 657–658.

 The record in the present case contains no evidence of actual malice on the part of the defendants. As previously discussed, the plaintiff tried her case on the theory that Bresnahan, the loss prevention manager, had performed an inadequate investigation before initiating the criminal prosecution against her, and that Montgomery Ward was responsible for his tortious action. This theory was consistent with a finding that Bresnahan had negligently, rather than maliciously, begun legal proceedings against Wilson. The trial court's instructions to the jury, without objection from the defendants, alternatively defined "malice" under a negligence standard. Moreover, the jury was permitted to infer "malice" from a finding of lack of probable cause.

The evidence at trial did not suggest that Bresnahan acted maliciously. While the plaintiff's testimony that she had never made a credit card purchase at Montgomery Ward conflicted with the testimony of Holmes and Fuller about her alleged unauthorized credit card use, the evidence that Holmes and Fuller had told Bresnahan that Wilson had made unauthorized credit transactions was uncontradicted. Bresnahan, Holmes and Fuller each testified that Bresnahan had received such information during the course of his investigation, and there was no evidence to the contrary.

Under these circumstances, there was insufficient evidence from which the jury could have concluded that Bresnahan acted from a wrongful motive when he initiated Wilson's criminal prosecution. Consequently, the award of punitive damages cannot stand.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE COURT OF SPECIAL APPEALS*

*WITH DIRECTIONS TO AFFIRM THE CIRCUIT COURT'S JUDGMENT FOR COMPENSATORY DAMAGES AND TO REVERSE THE CIRCUIT COURT'S JUDGMENT FOR PUNITIVE DAMAGES. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE EQUALLY DIVIDED.*

RAKER, J., concurs.

BELL, J., dissents.

RAKER, Judge, concurring:

I join in the judgment of the Court and join in Parts I, II, and III of the opinion. The Court states in footnote 5 that "'implied malice' in the sense of gross negligence can no longer form the basis of any punitive damages award in Maryland, regardless of the nature of the underlying tort." I write separately because, although I agree that gross negligence is insufficient to support a punitive damages award, gross negligence *plus* should be considered the legal equivalent of actual malice.

I agree with the concurring opinion of Judge McAuliffe in *Komornik v. Sparks,* 331 Md. 720, 629 A.2d 721 (1993), wherein he stated that "outrageous conduct sufficient to support a conviction for second degree murder under the 'depraved heart' theory should be treated as the legal equivalent of actual malice, and should be sufficient to permit consideration of an award of punitive damages." *Id.* at 731, 629 A.2d at 726 (McAuliffe, J., concurring).

I would adopt the test formulated by Judge McAuliffe: "A person who is actually aware that his [or her] action involves a clear and serious danger of substantial harm to the plaintiff or anyone in the plaintiff's class, and who unreasonably takes such action with flagrant indifference as to whether anyone will be harmed or not, should be liable for punitive damages if his [or her] conduct causes the foreseeable harm. This type of outrageous conduct, being just short of intentional harm, warrants such a sanction.

Although the requisite conduct and state of mind will often include gross negligence, the test would not be met by a showing of gross negligence alone."

*Id.* at 732, 629 A.2d at 727 (McAuliffe, J., concurring) (quoting *Owens–Illinois v. Zenobia*, 325 Md. 420, 477–78, 601 A.2d 633, 661 (McAuliffe, J., concurring)). Because the conduct of the defendants in this case does not meet that test, I agree that the judgment should be reversed.

BELL, Judge, dissenting.

I dissent. I agree with the Court of Special Appeals when it concluded that the Circuit Court for Prince George's County "correctly instructed the jury that a finding of implied malice could support an award of punitive damages in this case." *Montgomery Ward v. Wilson*, 101 Md.App. 535, 548–49, 647 A.2d 1218, 1225 (1994). *See also* my dissenting opinions in *Owens–Illinois v. Zenobia*, 325 Md. 420, 478, 601 A.2d 633, 661 (1992) and *Komornik v. Sparks*, 331 Md. 720, 740, 629 A.2d 721, 731 (1993).

Nor do I agree with the majority's conclusion that "[t]he evidence at trial did not suggest that Bresnahan acted maliciously." 339 Md. 701, 736, 664 A.2d 916, 933 (1995). The majority opines that the plaintiff's testimony denying making credit card purchases at Montgomery Ward, did not conflict with the testimony by two of her accusers that they informed Bresnahan that the plaintiff had made the unauthorized credit transactions. That testimony, the majority asserts, was uncontradicted. I do not agree.

Although indirect, the contradiction is implicit and sharp. The jury was not required to, and did not, believe the defense testimony. Indeed, given the sharpness of the contradiction and the fact that the plaintiff's version of the facts could not be reconciled with that of the defense the jury very likely determined that the defense evidence, concerning the source of Bresnahan's knowledge of the plaintiff's wrongdoing was fabricated. That certainly would establish the malice necessary to support the award of punitive damages.