**Derek MARRYSHOW, Plaintiff,**

v.

**TOWN OF BLADENSBURG, et al., Defendants.**

**Civ. A. No. MJG–90–1470.**

United States District Court, D. Maryland.

Oct. 31, 1991.

Nigel Scott and Marlon Charles, Washington, D.C., for plaintiff.

Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, Md., for defendants.

## DECISION ON MOTION FOR BIFURCATION

GARBIS, District Judge.

Plaintiff, Derek Marryshow, alleges that on June 10, 1989 three officers of the Bladensburg, Maryland Police Department (James Flynn, Matthew Rhomba, and Robert Cowling, the "active Defendants"), violated his constitutional rights and committed State law torts against him by arresting him without a valid reason to do so and by using excessive force in making the arrest. Plaintiff sues the active Defendants for violation of 42 U.S.C. Section 1983 and for the state law torts of false arrest and assault and battery. Plaintiff has also sued Ben Stephenson, Eric Morsicato, Robert Zidek and the Town of Bladensburg, (the "inactive Defendants [1]"), under Section 1983. Plaintiff contends that the inactive Defendants are liable for the actions of the active Defendants due to their failure to train, supervise, and investigate.

The Court has before it a Motion to Bifurcate filed by the inactive Defendants and consented to by the active Defendants. The motion is opposed by the Plaintiff. The pending motion raises a question perti-

---

1. Ben Stephenson, Eric Morsicato and Robert Zidek are sued in their official capacities as Mayor, Town Administrator, and Chief of Police respectively.

nent to many cases arising under 28 U.S.C. § 1983. That is, whether it would be most fair and efficient to resolve the liability of the active Defendants before determining whether liability should be imposed upon those inactive Defendants who are alleged to be "secondarily" liable. The Court, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," may order bifurcation of these liability issues under Rule 42(b) of the Federal Rules of Civil Procedure.

Of course, there is no single "best" way to handle a claim arising under Section 1983. Each case must be considered in light of its particular facts and circumstances. In this case, the question of bifurcation has been raised prior to the commencement of discovery on any claims against the inactive Defendants. In this context, it is possible to combine bifurcation for trial with the postponement until after the first trial, of discovery relevant only [2] to Plaintiff's claims against the inactive Defendants. Thus, it will be possible to defer, and possibly save altogether, the need for the postponed discovery.[3]

In contrast, where a motion for bifurcation is presented after discovery has been substantially or totally concluded, it might well be inappropriate for the Court to delay the opportunity of an inactive Defendant to have a motion for summary judgment resolved. Even in such a case, should the Plaintiff's claim against the inactive Defendant survive such a motion, the Court might then decide that bifurcation for trial is appropriate.

■ In this case, the Court finds that the interests of convenience, the avoidance of prejudice, as well as expedition and economy, will best be served by severing the trial of issues pertaining to Plaintiff's claims against the active Defendants from those he makes against the inactive Defendants. For reasons set forth below, this case will be bifurcated.

■ Plaintiff's claim against the inactive Defendants is dependent on the validity of his claim against the active Defendants for the events occurring on June 10, 1989.[4] Under Section 1983, to hold the inactive Defendants liable, Plaintiff must first establish that at least one active Defendant violated his constitutional rights. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); *Harbin v. City of Alexandria,* 712 F.Supp. 67, 73 (E.D.Va.1989), *aff'd* 908 F.2d 967 (4th Cir.1990). As stated in *Temkin v. Frederick County Commissioners,* 945 F.2d 716 (4th Cir.1991), "[a] claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised." Accordingly, a prerequisite to establishing liability of any inactive Defendant is the existence of a constitutional rights violation by one or more active Defendants.

■ In addition, to hold the inactive Defendants (or any of them) liable, Plaintiff must establish that the actions of the active Defendants subjecting him to Section 1983 liability were proximately caused by a custom, practice or policy of an inactive Defendant. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978); *Spell v. McDaniel,* 824 F.2d 1380, 1387–88 (4th Cir.1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). The danger of unfair prejudice to the active Defendants is created by this latter requirement.

To prove the liability of inactive Defendants under Section 1983, a Plaintiff must

---

**2.** All discovery that is permissible with respect to the claims against the active Defendants would proceed even though it may also relate to the claims against the inactive Defendants.

**3.** Of course, the parties are not precluded from seeking the Court's leave to proceed with all or part of the postponed discovery for good cause.

**4.** There is no allegation that the inactive Defendants personally participated in the commission of the constitutional torts and a defendant cannot be vicariously liable under Section 1983. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

ordinarily prove a number of prior incidents of police brutality, the nature of such incidents, and the municipal policymakers' reaction to them. *See Spell v. McDaniel,* 824 F.2d at 1391. *Compare Clipper v. Takoma Park, Maryland,* 876 F.2d 17, 20 (4th Cir.1989) (recognizing that proof of a single incident can suffice where circumstances indicate that the active Defendant's actions were, in fact, taken pursuant to a custom, practice or policy). In most cases, it is likely, if not inevitable, that there will be conflicting evidence regarding any alleged prior incidents of police brutality. Thus, it is highly probable that in determining a Plaintiff's claims against inactive Defendants, the jury will have to hear, and consider, evidence in "side show" trials regarding these matters.

In the case at bar, as alleged in the Amended Complaint, Plaintiff will seek to prove liability on the part of the inactive Defendants by proof of "ongoing complaints of police brutality against the black members of the county as a whole ...," "increasing amounts of brutality against black individuals by the police officers since the initiation of a drug task force," a "failure to train," a "failure to investigate the matter," and that "efforts by the Federal Bureau of Investigations to investigate the matter were rebuffed." Much (and possibly all) of this custom, practice or policy evidence would be both irrelevant to the jury's decision as to the events of June 10, 1989, and highly prejudicial to the active Defendants. Bifurcation facilitates a trial in which the Court can allow in evidence only that portion, if any, of the Plaintiff's custom, practice or policy evidence that is relevant and admissible[5] with regard to the events of June 10, 1989. This results in a fairer trial.

Moreover, it appears that there is little or no evidence admissible against the inactive Defendants which would be admissible at the trial of Plaintiff's claims against the active Defendants.[6] Therefore, so long as the Plaintiff and the inactive Defendants are bound by the verdict of the jury in the first trial, a substantial degree of economy in the litigation may also be achieved by bifurcation in this case.

If the result of the first trial is a verdict that no active Defendant violated Plaintiff's constitutional rights,[7] the Plaintiff would have no claim against the inactive Defendants. Therefore, it would not be necessary for the parties to incur the expense of preparation and trial of a case which would require the possibly extensive evidence necessary to show a custom or pattern of constitutional violations sufficient to hold the inactive Defendants liable.

If the jury should render a verdict in Plaintiff's favor on his Section 1983 claim against an active Defendant, subsequent proceedings may still be unnecessary. If Plaintiff's judgment were satisfied by payment,[8] or secured by a bond pending appeal, there might be no practical reason to proceed against the inactive Defendants.[9]

---

5. Even relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ..." Rule 403, Federal Rules of Evidence.

6. In a case in which there is substantial overlap of evidence, it may be less, rather than more, efficient to bifurcate the trial.

7. The active Defendants may present, at trial, the defense of qualified immunity. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (government official performing discretionary function shielded from civil liability by qualified immunity where actions do not violate clearly established tenets of constitutional law). If so, it will be necessary to utilize special interrogatories to obtain a verdict on the question of whether an active Defendant violated Plaintiff's constitutional rights and a finding of the amount of damages which Plaintiff sustained by virtue of the violation.

8. Whether by the active Defendant(s) held liable, any inactive Defendant, or by an insurer.

9. *Plaintiff has noted, in opposition to bifurcation, that there is no guarantee that the inactive Defendants (in particular the Town of Bladensburg or its insurer) would pay any judgment obtained against the active Defendants. This is, of course, true. The Court does not, however, see how Plaintiff's rights or ability to collect on a judgment against the active Defendants would be adversely affected by bifurcation. The Plaintiff, if he obtains a judgment in favor of any active Defendant on his Section 1983 claim, would be free to pursue collection on the judgment and also can proceed against the inactive*

In this case, there is only one scenario under which Plaintiff would have a reason to proceed to the second trial of his claim against the inactive Defendants. That would be if Plaintiff attained a verdict against at least one active Defendant in an amount which is neither paid nor secured by a bond pending appeal. Even in this circumstance, there would be a relatively small duplication of effort. Plaintiff will have already established the violation of his constitutional rights on June 10, 1989, as well as the amount of his damages. The second trial jury would be advised of the binding determination in Plaintiff's favor by the jury in the first trial and little, if any, duplicative evidence would be required.

For the foregoing reasons, the Court concludes that the pending Motion to Bifurcate should be granted. Accordingly:

1. There shall be separate trials of those issues relating to the Plaintiff's claim against Defendants Flynn, Rhomba and Cowling (the "active Defendants"), and Plaintiff's claims against Defendants Town of Bladensburg, Stephenson, Morsicato and Zidek (the "inactive Defendants").

2. The first trial shall resolve Plaintiff's claims against the active Defendants and the amount of any damages to which he may be entitled.

   a. The inactive Defendants may, but need not, participate in the first trial.

   b. In any event, Plaintiff and the inactive Defendants shall be bound by the results of the first trial.

3. If, in light of the result of the first trial and existing circumstances, it will be necessary to proceed with Plaintiff's claim against the inactive Defendants, a second trial will be scheduled. However, prior to this trial:

   a. The parties will be permitted a reasonable period of time to engage in discovery as to Plaintiff's claim against the inactive Defendants.

Defendants to obtain judgments against them. Under Rule 54(b), the Court could direct the entry of judgment against any active Defendant

   b. The Court will consider, in due course, any dispositive motions addressed to Plaintiff's claim against the inactive Defendants.

held liable even though there remain unresolved claims against the inactive Defendants.