Everett ALVAREZ, Jr., et al., Plaintiffs,

v.

MONTGOMERY COUNTY, MARYLAND, et al., Defendants.

Civil No. PJM 95–3627.

United States District Court, D. Maryland.

April 30, 1997.

Patrick J. Smith, Bernadette Sweeney, Rockville, MD, for plaintiffs.

Charles W. Thompson, Jr., Edward Barry Lattner, Linda Berk Thall, Joann Robertson, Rockville, MD, for defendants.

## OPINION

MESSITTE, District Judge.

This case is before the Court on Defendants' Motion for Reconsideration. Plaintiffs are Everett and Tammy Alvarez and their son Mark. They have sued Montgomery County, Maryland; the County Executive of the County; the County Chief of Police, three County police officers, and an intern who was working with the police at the time of the events in question.[1]

Earlier, the Court granted Defendants' Motion for Summary Judgment in part and denied it in part. In their Motion for Reconsideration, Defendants ask the Court to revisit the counts as to which summary judgment was denied. Having reviewed the Motion, the Court has determined to GRANT it and now enters full summary judgment in favor of Defendants.

### I.

On the afternoon and evening of June 24, 1995, a party was in progress at the Alvarez residence in Potomac, Maryland celebrating Mark's 21st birthday. Some 70–75 people had been invited.

While the party was going on, Montgomery County police officer John P. Romack, on duty in the Rockville/North Potomac area, received a call from a dispatcher reporting underage drinking at a location near the Alvarez home. After making radio contact with other police officers in separate vehicles, Romack began to cruise the community in pursuit of the report.

As he approached the Alvarez home, he observed alcohol containers along the side of the road, including plastic cups, a beer can and a bottle. The location of similar beer items in front of the Alvarez home and the number of cars parked in front suggested that some sort of social event was taking place at the residence.

Romack set about to notify the homeowner of the radio call that he had received and to point out the alcohol containers he had observed in front of the home. He advised his fellow officers that he believed he had found the location of the party.

Romack proceeded to the front door of the Alvarez home, walking up the driveway onto the walkway leading to the front door. As he approached the stoop in front of the door, his attention was drawn to a sign on the lamp post, an 8½ × 11 inch piece of paper indicating "party around back." An arrow on the sign directed persons toward the side of the house.

Romack read the sign and, together with fellow officers who had by then arrived, proceeded around the side of the house, entered an open gate, and was drawn to the sound of voices coming from around the back.[2]

Romack immediately encountered several individuals on the patio in the back and asked one if he could speak with the homeowner. While waiting for that person to appear, Romack observed a young woman whom he believed to be under the age of 21 and who appeared to be drinking. He noted that the red plastic cup in the young woman's hand was of the same type he had observed in the roadway. When asked her age, the young woman stated that she was 21 and produced an identification to that effect. Based on his experience, Romack believed the identification was fictitious and told the young woman so.

At that point Mark Alvarez emerged from the house, demanding to know what Romack was doing on the property. Romack explained the police call and reported his observation regarding the presence of alcoholic containers in the front of the house. He stated that he was there to talk to the homeowner. He also told Mark that he doubted the veracity of the young woman's identification and stated his belief that she appeared to be an underage drinker.

---

1. With the consent of the parties, the Court bifurcated the trial of the individual police officers and the County Defendants, taking the former first. *See Marryshow v. Town of Bladensburg*, 139 F.R.D. 318 (D.Md.1991).

2. One of the officers, purportedly for the officers' safety, approached from the opposite side of the house and climbed a split rail fence on that side to enter the back yard.

Romack and the other officers then escorted the young woman to the front of the house where they inquired further about her identification. In the course of the interrogation, the young woman admitted she was only 19 years old, advised that Mark Alvarez was the host of the party, and said that she believed he knew her age.

According to Everett Alvarez, who by that time had come out front where the young woman was being questioned, after Romack finished the questioning, Romack said "I want to talk to him (Mark Alvarez)." Although the senior Alvarez indicated that he was the one to deal with regarding any consequences arising from the party, Romack stated, "No, this is his (Mark's) party and he's hosting it and I want to talk to him."

Everett Alvarez then went into the house to get his son, where the following conversation took place:

A—and I said, "Marc" I said, "come on, he wants to talk to you, the officer wants to talk to you." And Marc at that time, as I recall, said, "Dad, I don't want to go."

Q  Un-hun.

A  And I said, "Come on, he just wants to talk to you." Anyway, so Marc—okay.

Q  He was reluctant?

A  He was reluctant, but then—

Q  Did he say something to you like—did he say something, he didn't want to go out there because he might say something he didn't want to say?

A  No.

Q  You don't recall him saying something like that?

A  No.

Mark Alvarez thereupon emerged from the house and encountered Officer Romack. Romack immediately advised Mark that the police would be charging him with serving alcohol to a minor in violation of *Maryland Code* (1957, 1939), Art. 27, § 401A and issued him a citation to that effect.[3]

**3.** Following trial in the District Court for Montgomery County, Mark Alvarez was found not guilty. The young woman who had been ques-

## II.

The Court briefly summarizes its prior rulings.

As to the Defendants' Motion to Dismiss, the Court ruled as follows:

Given that the case essentially involved a police search and seizure, the Court dismissed all constitutional claims other than claims of Fourth Amendment violations. *See Albright v. Oliver,* 510 U.S. 266, 274, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994); *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The Court also dismissed all of Plaintiffs' claims against the defendants in their official capacities inasmuch as they were duplicative of the claim brought directly against Montgomery County. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). The claims against the County Executive and the Chief of Police in their individual capacities were dismissed because of their lack of personal involvement in the disputed acts. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Carder v. Steiner,* 225 Md. 271, 275, 170 A.2d 220 (1961). State law claims against the County (for trespass, false imprisonment, malicious prosecution, and intentional infliction of emotional distress) were dismissed because of the County's governmental immunity against such claims. *Austin v. City of Baltimore,* 286 Md. 51, 53, 405 A.2d 255 (1979); *Quecedo v. Montgomery County,* 264 Md. 590, 287 A.2d 257 (1972). Plaintiffs' claim of intentional infliction of emotional distress was dismissed as to all Defendants because the actions complained of did not reach the level of extremeness and outrageousness required to establish that tort under Maryland law. *See Kentucky Fried Chicken National Management Co. v. Weathersby,* 326 Md. 663, 670, 607 A.2d 8 (1992); *Hamilton v. Ford Motor Credit Co.,* 66 Md.App. 46, 59, 502 A.2d 1057 (1986).

What remained, following the Court's ruling, were these causes of action:

tioned by Romack, however, testified at trial that she was under age and that she had consumed an alcohol beverage at the Alvarez party.

Count I, a 42 U.S.C. § 1983 claim based on violation of the Fourth Amendment against the police officers in their individual capacities and against the County;

Count II, trespass and false imprisonment claims against the police officers in their individual capacities; and

Count III, a malicious prosecution claim against the police officers in their individual capacities.

Following discovery, both sides filed dispositive motions, Plaintiffs a Motion for Partial Summary Judgment, Defendants a Cross–Motion for full Summary Judgment. At the close of oral argument on the motions, the Court, as set forth more fully on the record at the time, made several determinations.

Plaintiffs' Motion for Partial Summary Judgment was denied in its entirety. Defendants' Motion was granted in part and denied in part.

The Court found first that, in following the sign around to the back of the house, the officers had committed no trespass. *See United States v. Bradshaw,* 490 F.2d 1097 (4th Cir.1974); *United States v. Daoust,* 916 F.2d 757, 758 (1st Cir.1990). It also found, given the existence of probable cause, that there had been no malicious prosecution with regard to the citation given to Mark Alvarez for serving alcohol to a minor. *Montgomery Ward v. Wilson,* 339 Md. 701, 714, 664 A.2d 916 (1995). Summary judgment was entered in Defendants' favor as to those counts.

Subject to possible reconsideration, the Court denied Defendants' Motion with regard to Mark Alvarez's claim of illegal arrest under 42 U.S.C. § 1983 (Count I) and his claim for false imprisonment (Count II).[4]

Defendants have now filed their Motion for Reconsideration, which Mark Alvarez has responded to. The Court turns its attention to Defendants' further arguments.

### III.

With regard to the § 1983 claim, Defendants contend that Mark Alvarez was not illegally seized from his parents' home and alternatively that, to the extent they may be deemed to have crossed the "threshold" of his home, access was obtained through third party consent. They argue further that even if they violated Mark Alvarez's Fourth Amendment rights, they are entitled to qualified immunity because it was not clearly established at the time of the underlying events that an individual's Fourth Amendment rights would be violated when a father is told, however firmly, by the police that they wish to speak to his son and the father directs the son to comply. Finally, they argue further that they had legal justification to seize Mark Alvarez and that he was not falsely imprisoned while they cited him for furnishing alcohol to a minor. Mark Alvarez vigorously disputes each of these propositions.

■ In *Payton v. New York,* 445 U.S. 573, 576, 590, 100 S.Ct. 1371, 1374–75, 1382, 63 L.Ed.2d 639 (1980) the U.S. Supreme Court held that, absent exigent circumstances, police officers may not without consent enter an individual's home to make a warrantless arrest for a felony, even if they have probable cause. On the other hand, *United States v. Watson,* 423 U.S. 411, 423–24, 96 S.Ct. 820, 827–28, 46 L.Ed.2d 598 (1976) confirmed that an arrest warrant is not required when the arrest is made in public based upon probable cause.[5]

■ Leaving aside for a moment the location of the arrest in this case, there can be no doubt that Defendants had probable cause to effect it. By the time Mark Alvarez encountered Officer Romack, Romack had been advised by the young woman at the party that she was under age, that the party was hosted by Mark Alvarez and that she had consumed alcohol on the premises.

---

**4.** Only those claims of Mark Alvarez survived. Summary judgment was granted as to all claims of Everett and Tammy Alvarez.

**5.** "A police officer is permitted to make an arrest without a warrant for a misdemeanor committed in his presence.... However, this requirement

that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not mandated by the Fourth Amendment; it is merely a rule of the common law." *United States v. Smith,* 73 F.3d 1414, 1416 (6th Cir.1996).

Indisputably the Defendants never crossed the threshold of the Alvarez home to accomplish an arrest of Mark Alvarez; whatever arrest there was occurred in the street. . The question, then, is whether any police action occurred in this case that the law equates with an unauthorized entry into the home.

Professor LaFave in his treatise on *Search and Seizure* summarizes the applicable principles:

> Though some of the cases on outside-the-threshold arrests have not even considered how it was that the defendant came to be there rather than inside, others have given specific attention to the police action which caused the arrested person first to leave the interior of the residence. It has been deemed unobjectionable that the defendant came outside at the request of police who did not reveal their intention to arrest, or, indeed, even that the police engaged in some affirmative misrepresentation, such as that they merely wanted to discuss matters with him or that he was viewed by them only as a suspect or a witness. Such ruses have been considered permissible because ... "in other contexts, courts have considered the police tactic of misinformation and have found no constitutional violation." Here again, however, the warrantless arrest will be illegal if the defendant's presence outside was acquired by coercion or a false claim of authority (e.g., that otherwise they would be entitled to enter the premises). (Footnotes omitted)

Wayne R. LaFave, *Search and Seizure* (Third Ed.1996), § 6.1(e).

No false claim of authority is argued here and therefore the Court need not address it. The jugular issue is whether Mark Alvarez's eventual appearance outside his home was accomplished by police coercion.

■ The cases cited by Professor LaFave indicate that the show of force that draws the individual from his home must be extensive. Impermissible coercion has been found in a number of cases. In *United States v. Maez,* 872 F.2d 1444 (10th Cir.1989), some ten officers, including SWAT team members with drawn weapons, surrounded a trailer and used loud speakers. In *United States v. Curzi,* 867 F.2d 36 (1st Cir.1989), all occu-

pants of a dwelling were ordered out and defendant exited with the others. In *United States v. Al–Azzawy,* 784 F.2d 890 (9th Cir. 1985), the police surrounded the individual's trailer with weapons drawn and ordered him out by bullhorn. Likewise, in *United States v. Morgan,* 743 F.2d 1158 (6th Cir.1984), the police surrounded the defendant's home and ordered him to exit by bullhorn. In *Scroggins v. State,* 276 Ark. 177, 633 S.W.2d 33 (1982), the individual who answered the door and stepped into the hallway confronted officers training a gun on him, who then asked him to accompany them outside.

In marked contrast, where a telephone dispatcher "telephoned and requested" rather than "ordered" an individual to go outside and talk with an officer, the warrantless arrest that followed outside was deemed lawful. *State v. Cody,* 236 Neb. 69, 459 N.W.2d 195 (1990). Similarly where police phoned an individual in his home and told him he was a suspect in a homicide, his emergence from the home in response to the call was not deemed coerced. *Mincey v. State,* 251 Ga. 255, 304 S.E.2d 882 (1983).

■ In the present case, the Court discerns no force or threat of force of any kind employed by the officers. No weapons were drawn, no bullhorns were used, indeed Mark Alvarez was never ordered to come out. Officer Romack told Everett Alvarez, Jr., firmly to be sure, that he wanted to speak with his son. It was the Senior Alvarez, not the officer, who communicated with Mark Alvarez. That fact alone significantly attenuates the forcefulness of the request.

If there were any doubt about the lack of force, the colloquy between father and son dispels that. Referring to Officer Romack, the senior Alvarez said, "Come on, he just wants to talk to you ... he was reluctant, but then ... I mean, you know ... so he said 'Okay, Dad,' ... so he came out."

This can only be construed as consent, reluctant though it may have been. Mark Alvarez had the right to refuse to come out and could have required the police to obtain a warrant, but the fact that he may have ultimately exited because the police were the police and they wanted very much to talk to

him does not otherwise convert a consensual act into a non-consensual one.[6]

 In any event, whether or not the officers' conduct was constitutional, if the state of the law was not sufficiently developed at the time that it would have been obvious to reasonable officers similarly situated that their actions were violative of the Fourth Amendment, the officers would be entitled to qualified immunity from liability for civil damages. *E.g. Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Winfield v. Bass,* 106 F.3d 525, 530 (4th Cir.1997) (en banc). The specific right violated would be a supposed Fourth Amendment right to preclude a seizure resulting from an officer's insistence (short of a show of actual force) that an individual should exit his home for questioning and ticketing in regard to a suspected misdemeanor. The Court, however, has just concluded that the officers' actions pass constitutional muster even today. It can hardly be maintained that it would have been obvious to reasonable officers that these actions were violative of the Fourth Amendment when they occurred more than 17 months ago. At a minimum, the officers enjoyed qualified immunity in these circumstances.

### IV.

 Mark Alvarez's claim for false imprisonment also fails. The seizure he complains of consisted of the brief period in which he was in the presence of the officers while they wrote out a citation form for furnishing alcohol to a minor. False imprisonment requires "a deprivation of the liberty of another without his consent and without legal justification." *Montgomery Ward v. Wilson,* 339 Md. at 721, 664 A.2d 916. Here the record is clear that the encounter was both consensual and legally justified.

### V.

For the foregoing reasons, the Court GRANTS Defendants' Motion for Reconsideration and ENTERS summary judgment in their favor on Mark Alvarez's Fourth Amendment and false imprisonment claims.

A separate Order will be entered implementing this decision.

---

6. The Court finds it unnecessary to discuss Defendant's alternative argument that, to the extent they are deemed to have crossed the threshold, they entered with the permission of a third person, *i.e.* Everett Alvarez, Jr.