**William DANIELS, Plaintiff,**

v.

**P.O. Leonard LOIZZO, M.V.P.D., P.O. Daniel Fisher, M.V.P.D., and the Mount Vernon Police Department, Defendants.**

**No. 87 CIV. 6024(MJL).**

United States District Court, S.D. New York.

March 13, 1998.

Winthrop, Stimson, Putnam & Roberts (John Zaloom, of counsel), New York City, for Plaintiff.

Martino & Weiss (Douglas Martino, of counsel), Mount Vernon, NY, for Defendants.

### OPINION AND ORDER

LOWE, District Judge.

Before the Court is the motion of defendant police officers Leonard Loizzo and Daniel Fischer ("Individual Defendants") and defendant Mount Vernon Police Department ("Municipal Defendant") (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 42(b) ("Rule 42(b)"), to bifurcate the trials of the Individual Defendants and the Municipal Defendant. For the reasons stated below, the Court grants the Rule 42(b) motion. The first trial will cover all claims against the Individual Defendants. The second trial, if necessary, will cover all claims against the Municipal Defendant.

### BACKGROUND

The parties have presented widely divergent accounts of the events underlying this action. Plaintiff William Daniels ("Plaintiff") claims that, on the evening of July 6, 1987, he was riding in a jeep with two acquaintances when defendant police officers Leonard Loizzo ("Loizzo") and Daniel Fischer ("Fischer") stopped their vehicle for an alleged traffic violation. Joint Pre-trial Order at 4. According to Plaintiff, Fischer approached the passenger seat where Plaintiff was seated. *Id.* After Plaintiff refused to open the door, Fischer drew his service revolver at him, shouting "Open the door, nigger, or I'll blow your head off!" *Id.* at 5. Plaintiff exited the

jeep, whereupon Fischer grabbed him and slammed him against the car. *Id.*

Plaintiff alleges that Loizzo then placed Plaintiff in a "choke-hold." *Id.* As Loizzo held Plaintiff down, Fischer searched the jeep, pulling a vinyl bag containing an automatic weapon from "under the [] seat." *Id.* Fischer then walked to the police car, dropping the automatic weapon "along the way." *Id.* At that moment, Plaintiff's acquaintance, who was sitting in the back seat of the jeep, jumped into the front seat and drove away. *Id.* Angry about the escape, Fischer "repeatedly pistol-whipped" Plaintiff, while Loizzo held him down. *Id.* at 6.

Plaintiff further alleges that, fearing for his life, he broke free and attempted to run away. *Id.* at 7. Fischer responded by jumping on top of Plaintiff and knocking him to the ground. *Id.* Fischer then pointed his service revolver at Plaintiff's head, yelling "what, do you think I won't do it, nigger?" *Id.* Moving his revolver to the side of Plaintiff's head, Fischer fired his gun. *Id.* Fischer and Loizzo then beat Plaintiff "to the point of unconsciousness." *Id.*

The Individual Defendants arrested Plaintiff, charging him with criminal possession of a weapon, reckless endangerment, and assault. *Id.* Plaintiff claims that the police officers then took him to the Mount Vernon Police Department, where he was badly beaten. *Id.* at 8. Plaintiff contends that he was handcuffed to a radiator and attacked with nightsticks at the police station. *Id.* Plaintiff was taken to the Mount Vernon Hospital where he was treated for "severe multiple injuries." *Id.*

According to defendants, Fischer and Loizzo stopped Plaintiff and his acquaintances for "turn[ing] right on a red light without yielding to traffic." *Id.* at 15. The Individual Defendants then approached the vehicle and saw an automatic hand weapon in Plaintiff's lap. *Id.* Defendants claim that Fischer and Loizzo were attempting to "lead Plaintiff out of the vehicle," when Plaintiff began violently attacking Loizzo. *Id.* Plaintiff then picked up the weapon, which had fallen to the ground, and pointed it at Fischer. *Id.* Fischer, fearing for his life, fired his weapon at Plaintiff. *Id.* Plaintiff then dropped to the ground, but refused to release the weapon. *Id.* Plaintiff continued to violently "fight [the] police" until he was restrained by Loizzo and Fischer. *Id.* at 16. Both Loizzo and Fischer were treated at the Mount Vernon Hospital for injuries caused by Plaintiff. *Id.*

Plaintiff filed this action against the defendants, asserting violations of 42 U.S.C. § 1983 ("Section 1983"), as well as assault, battery, intentional infliction of emotional distress, and negligence. In the complaint, Plaintiff alleges that the Individual Defendants used excessive force against him in violation of his constitutional rights. Plaintiff also contends that the Municipal Defendant failed to adequately recruit, train, and discipline the Individual Defendants. Defendants now move for separate trials of the claims against the Individual Defendants and the Municipal Defendant under Rule 42(b).

## DISCUSSION

### I. *Legal Standard Governing Rule 42(b)*

A district court has broad discretion to order separate trials under Rule 42(b) in order to (1) promote convenience, (2) expedite the proceedings, or (3) avoid unfair prejudice to a party. Fed.R.Civ.P. 42(b); *Ricciuti v. New York City Transit Authority*, 796 F.Supp. 84, 86 (S.D.N.Y.1992). Only one of the three factors must be met to justify bifurcation. *Ismail v. Cohen*, 706 F.Supp. 243, 251 (S.D.N.Y.1989), *aff'd*, 899 F.2d 183 (2d Cir.1990). Judicial efficiency is served where a separate trial disposes of one claim or establishes a necessary element of a second claim. *Id.*

### II. *Defendants' Motion to Bifurcate*

Defendants contend that separate trials are necessary to avoid the admission of inflammatory evidence that would prejudice the Individual Defendants. Defs.' Mem. of Law at 3. According to defendants, Plaintiff intends to introduce at trial evidence of the Individual Defendants' "similar, [but] unrelated ... misconduct" in support of his Section 1983 claims against the Municipal Defendant. *Id.* Admission of this evidence, defendants argue, may lead the jury to improperly infer that the Individual Defen-

dants "instigated the incident or have a propensity for excessive force" based on their prior misconduct. *Id.* at 4. The Court agrees.

Evidence of the Individual Defendants' past misconduct would be admissible to prove the Municipal Defendant's liability under Section 1983 for negligent hiring, training, and supervision.[1] *See, e.g., Amato v. City of Saratoga Springs,* 972 F.Supp. 120, 124 (N.D.N.Y.1997); *Carson v. City of Syracuse,* No. 92 Civ. 777, 1993 WL 260676, at *3 (N.D.N.Y. July 7, 1993).[2] The same evidence, however, would most likely be inadmissible against the Individual Defendants. Evidence of "other crimes, wrongs, or acts" is not admissible under Federal Rule of Evidence 404(b) to prove character or propensity. *See* Fed.R.Evid. 404(b); *United States v. Gordon,* 987 F.2d 902, 908 (2d Cir.1993). The past misconduct evidence here might be improperly considered by the jury as proof of the violent propensity and character of the Individual Defendants. *Amato,* 972 F.Supp. at 124; *Carson,* 1993 WL 260676, at *3. Such evidence also would likely be excluded under Federal Rule of Evidence 403 due to its inflammatory nature. *See, e.g., Amato,* 972 F.Supp. at 124. Moreover, Plaintiff has offered no alternative, legitimate purpose for which the same evidence could be admitted against the Individual Defendants. Accordingly, the Court would exclude the past misconduct evidence to prove that the Individual Defendants acted in a similar manner on July 6, 1987. *See, e.g., id.* (finding proof of past police misconduct inadmissible for claims against individual officers in excessive force case); *Carson,* 1993 WL 260676, at *3 (same).

Thus, if the jury considers the past misconduct evidence against Municipal Defendant in a consolidated trial, there exists a substantial danger of unfair prejudice to the Individual Defendants. Courts, faced with this dilemma, have separated the trial of individual police officers from that of the municipality "so that evidence admissible only against the municipality does not unfairly taint the trial of the individual officer[s]." *Carson,* 1993 WL 260676, at *3; *see also Amato,* 972 F.Supp. at 124 ("the likelihood of unfair prejudice against the police officers resulting from the admission of [prior misconduct] evidence on the Monell claim would justify, if not compel, bifurcation."); *cf. Ismail,* 706 F.Supp. at 251 (deeming bifurcation appropriate in order to avoid "danger that evidence admissible on the issues related to conduct by the City or [the individual police officers] w[ould] contaminate the mind of the finder of fact in its consideration of the liability of the other defendant."). Accordingly, the Court finds bifurcation appropriate in order to avoid prejudice to the Individual Defendants.

Moreover, separate trials here may promote judicial efficiency. To prevail on his Monell Claims, Plaintiff must show that one of the Individual Defendants inflicted a constitutional injury. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); *Pitchell v. Callan,* 13 F.3d 545, 549 (2d Cir.1994). Thus, a jury finding that the Individual Defendants did not violate Plaintiff's constitutional rights obviate the necessity of a trial on Plaintiff's Monell Claims.[3] *See, e.g., West v. City of*

---

**1.** The landmark Supreme Court case, *Monell v. Department of Social Servs.,* 436 U.S. 658, 663, 98 S.Ct. 2018, 2021–21, 56 L.Ed.2d 611 (1978), established a plaintiff's right to sue a municipality under Section 1983. Accordingly, the Court refers to Plaintiff's negligent hiring, training, and discipline claims asserted against the Municipal Defendant under Section 1983 as "Monell Claims."

**2.** The Court does not consider this statement as a final ruling on the admissibility of such evidence. Instead, the Court will entertain any objections to the admission of this evidence at the time of its introduction. The Court simply finds that, without specific objections, the Mount Vernon Police

Department's knowledge of the defendant police officers' past misconduct appears relevant to the Monell Claims.

**3.** The Individual Defendants may present the defense of qualified immunity at trial. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Qualified immunity shields a police officer from civil damages liability even if the officer violated a plaintiff's constitutional rights "as long as [his] actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.* If the jury finds that the Individual Defendants violated Plaintiff's constitutional rights but nonetheless escape liability on the ba-

*New York,* No. 88 Civ. 1801, 1996 WL 240161, at *5 (S.D.N.Y. May 8, 1996).[4] Because a second trial may be unnecessary, the parties and the Court may benefit from a bifurcated trial process.

Given the strong possibility that the Individual Defendants may be prejudiced by a consolidated trial and the possible efficiency of separate trials, the Court finds bifurcation appropriate. Accordingly, the first trial will cover all of Plaintiff's claims against the Individual Defendants. In the event the trier of fact returns a verdict against the Individual Defendants, the case will immediately proceed to consideration by the same jury of the Municipal Defendant's liability. *See Carson,* 1993 WL 260676, at *7.

## CONCLUSION

The Court hereby grants the Rule 42(b) motion for a bifurcated trial. The trial of the claims against the Individual Defendants shall be held first. If Plaintiff establishes liability against the Individual Defendants, then the trial against the Municipal Defendant shall proceed immediately thereafter.

It is So Ordered.

sis of qualified immunity, then the trial against the Municipal Defendants should proceed. *Ricciuti,* 796 F.Supp. at 86. This is because the qualified immunity defense is not available to the municipality. Thus, it will be necessary to utilize special interrogatories to obtain a verdict on the question of whether the Individual Defendants violated Plaintiff's constitutional rights. *See Marryshow v. Town of Bladensburg,* 139 F.R.D. 318, 320 n. 7 (D.Md.1991). The special interrogatories would also ascertain the amount of dam-

ages attributable to the constitutional violation. *Id.*

4. In addition, Plaintiff's Monell Claims will require extensive evidence about the Mount Vernon Police Department's policies on the use of force that is largely irrelevant to Plaintiff's claims against the Individual Defendants. *See Ismail,* 706 F.Supp. at 251.