Deborah THOMAS

v.

GALVESTON COUNTY and Booker T. Joseph, III.

Civil Action No. G–95–412.

United States District Court, S.D. Texas, Galveston Division.

Feb. 4, 1997.

David P. Matthews, Abraham Watkins Nichols Ballard & Friend, Houston, TX, for plaintiff Deborah Thomas.

Donald S. Glywasky, Galveston County, Legal Dept., Galveston, TX, for defendant Galveston County.

Anthony P. Griffin, Galveston, TX, for defendant Booker T. Joseph, III.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Deborah Thomas alleges a violation of her constitutional rights under the Fourteenth Amendment and brings this action pursuant to 42 U.S.C. § 1983. Now before the Court is Defendant Galveston County's Motion for Summary Judgment dated October 25, 1996. For the reasons set forth below, the Motion is **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiff Thomas was an inmate of the Galveston County Jail from September 1994 until February 1995. She had been booked into the jail in September 1994, both on an outstanding parole violation warrant and for a new burglary offense, for which she was convicted on October 31, 1994. She was transported to the Texas Department of Corrections on February 4, 1995.

During her confinement at the jail, Booker T. Joseph, then a deputy at the jail, allegedly sexually assaulted and harassed Thomas on four separate occasions.[1] Thomas first began having trouble with Joseph in November of 1994, around Thanksgiving. The last incident occurred on January 23, 1995. During each incident, Joseph made repeated threats to Thomas in an attempt to keep her quiet about his activities. These episodes were of a sexual nature where Joseph, for example, told Thomas to expose her buttocks to another guard, another time slipping his hand into Thomas's shirt and pants, and on the final occasion exposing himself and forcing Thomas to perform oral sex. Thomas did not report any of Joseph's activities to any of the guards or jail staff until after the final incident in January 1995.

Prior to her confinement in the jail in Fall 1994, Thomas had been confined there approximately a half dozen times. Never before had she had any experiences with any guard similar to the incidents with Joseph, nor did she have any complaints regarding any of the male guards at the jail. By her own deposition testimony, Thomas felt that she had been well treated on all other occasions.

All deputies who work in the jail are taught the Policies and Procedures of the Galveston County Sheriff's Department Cor-

---

1. Joseph was a Co–Defendant in this case, but has been dismissed by the Plaintiff. Joseph has been indicted for sexual assault and two counts of official oppression and is currently awaiting trial.

rections Division. These policies and procedures contain numerous safeguards to protect the female inmates of the jail including, for example, specific provisions for frisks and strip searches (to be done by female deputies), the processing of female inmates, and the segregation of male and female inmates. The policy regarding abuse of inmates plainly states that "verbal and/or physical abuse of an inmate will not be tolerated. Violation of this rule may serve as a basis for immediate termination." Defendant's Ex. 4–A. Under this policy, deputies who witness such an incident have a responsibility to report the incident immediately to their supervisor. A deputy who fails to do so could be considered to be involved in a conspiracy.

At no time during the months of Thomas' confinement in the Fall of 1994 was any incident of any abusive conduct on the part of Deputy Joseph reported to the jail supervisors. The first time Thomas communicated her difficulties with Joseph to any jail personnel was the day after the final incident, January 24, 1995, when she spoke with Deputy Lorraine McChristian. McChristian immediately notified her supervisor and Deputy Brandt Raeburn began an investigation that very day. As a result of that investigation, Raeburn determined that Joseph had had sexual encounters with a number of female inmates, none of which had ever been reported to any supervisor at the jail. Two other deputies were found to have heard rumors of Joseph's activities, but had failed to report these rumors to any of the jail supervisors. As a result of Raeburn's findings, two deputies were disciplined for their failure to report, and Joseph was suspended without pay and subsequently terminated.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; See Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. SECTION 1983 CLAIMS

Section 1983 provides that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any.... person within the jurisdiction [of the United States] to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Therefore, an actionable § 1983 claim must allege a deprivation of rights secured by the Constitution by a person acting under color of state law. *Daniels v. Williams,* 474 U.S. 327, 329–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Evans v. City of Marlin,* 986 F.2d 104, 107 (5th Cir. 1993), *disagreed with on other grounds, Hare v. City of Corinth, MS,* 74 F.3d 633 (5th Cir.1996).

Although municipalities are "persons" within the meaning of § 1983, they may only be held liable if the constitutional harm suffered was the result of an "official policy, custom, or pattern." *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–37, 2039, 56 L.Ed.2d 611 (1978). Municipalities may not be held liable under either a theory of respondeat superior or vicarious liability. *Oklahoma City v. Tuttle,* 471 U.S. 808, 817, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *Doe v. Taylor Indep. School Dist.,* 15 F.3d 443, 452 (5th Cir.) (en banc), *cert. denied,* 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). They also may not be held liable under

§ 1983 for mere negligence in oversight. *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir.1992) (citing, *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)). Nonetheless, prison officials may not ignore obvious dangers to inmates. *Farmer v. Brennan*, 511 U.S. 825, 825–26, 114 S.Ct. 1970, 1973, 128 L.Ed.2d 811 (1994).

■ Therefore, in order to hold a municipality liable, a plaintiff must show that his or her constitutional deprivation was caused by the county's adoption of (or failure to adopt) the particular policy, and that such action went beyond mere negligent protection of the plaintiff's constitutional rights. *Hare v. City of Corinth, MS*, 74 F.3d 633 (5th Cir.1996).[2] That is, an alleged inadequacy in a municipal policy must amount to "an intentional choice, not merely an unintentionally negligent oversight". *Id.*

When analyzing a § 1983 claim against a municipality, the Court must first decide if the County promulgated "an official policy, practice, or custom," which could subject it to § 1983 liability. *Monell*, 436 U.S. at 690–94, 98 S.Ct. at 2035–37. The Fifth Circuit has defined an "official policy" for the purposes of § 1983 liability to be either: 1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's law-making officers or by an official to whom the lawmakers have delegated policy-making authority; or 2) a persistent widespread practice of county officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984).

■ The facts of this case do not present an "official policy" under these definitions. Although the Court finds the facts of this case horrendous, the Plaintiff simply fails to allege any policy or lack thereof to establish a claim of constitutional violations against the

County. In fact, the summary judgment evidence supports that the County had specific policies against the very occurrences reported by Thomas. Any violations of those policies were to be immediately reported to the offending deputy's supervisor so that corrective action could be undertaken.

Furthermore, these policies appear to work in practice as well as in theory. When Thomas did finally report Joseph's activities to jail personnel in January, the jail supervisors responded immediately. As a result, corrective action was taken, and Joseph was suspended without pay and subsequently terminated. Indeed, as a result of the ensuing investigation by Deputy Raeburn, Joseph is currently awaiting trial on criminal charges of sexual assault and official oppression. While Joseph's activities were reprehensible, the Court can find no policy of the County which would have allowed or approved of his offensive behavior.

■ Assuming, *arguendo*, that the Plaintiff here could establish that the County had promulgated an "official policy," the Court would then determine if that policy can be linked to a constitutional violation. *Monell*, 436 U.S. at 690–94, 98 S.Ct. at 2035–37. Thus, the next step in the Court's § 1983 analysis would be to determine if Thomas's complaint alleges a constitutional deprivation.

The Plaintiff does complain of a deprivation of a federally protected right involving the Due Process Clause of the Fourteenth Amendment, but as a person previously convicted of an offense, her claim arises out of the Eighth Amendment. *See Palermo v. Rorex*, 806 F.2d 1266, (5th Cir.), *cert. denied*, 484 U.S. 819, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987). The sexual assaults on Thomas while she was held in the Galveston County Jail are covered by the Eighth Amendment's prohibition against "cruel and unusual punishment" which applies only to convicted prisoners. *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40, 97 S.Ct. 1401, 1412, n. 40, 51 L.Ed.2d 711 (1977).

**2.** *See also Colle v. Brazos Cty., TX*, 981 F.2d 237, 246 (5th Cir.1993) (concluding that "the ultimate question is whether Brazos County adopted policies creating an obvious risk that pretrial detainees' constitutional rights would be violated");

*Rhyne*, 973 F.2d at 392 ("while the municipal policy maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight.").

In this case, Thomas was an inmate of the Galveston County Jail awaiting her transfer to the Texas Department of Corrections when the alleged violation of her Constitutional rights stemming from Joseph's sexual assaults occurred. The County, therefore, had a constitutional obligation under the Eighth Amendment to provide humane conditions of confinement, and to take reasonable measures to guarantee the safety of the inmates. *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). Thomas's claim challenges the adequacy of the levels of safety and security given to inmates of the County's jail. Therefore, Thomas's claim properly alleges a constitutional violation.

It is not, however, every injury suffered by a prisoner that translates into constitutional liability for prison officials responsible for the prisoner's safety. A prison official violates the Eighth Amendment only when two requirements are met. The first requirement dictates that the deprivation alleged must be, objectively, "sufficiently serious". *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977. Objectively, the alleged sexual assaults on Thomas are sufficiently serious to meet this threshold test.

Second, liability attaches only if the prison officials involved were subjectively and "deliberately indifferent" to the prisoner's rights. *Id.* at 837–38, 114 S.Ct. at 1979. In other words, the official must know of and disregard an excessive risk to inmate health or safety. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* Therefore, an official's failure to alleviate a significant risk that he *should* have perceived but did not, while no cause for commendation, will not impose liability. *Id.* This high level of scrutiny insures that municipalities will not be held liable for mere negligence, but will instead only answer for intentional violations of the prisoner's rights.

Applying the Supreme Court's subjective "deliberate indifference" test, even assuming that the Plaintiff here could establish that the County had promulgated an "official policy," nothing in the summary judgment evidence establishes a genuine issue of material fact that the County knew of and disregarded an excessive risk to Thomas's health and safety. Prior to Thomas's complaint in January 1995, no incident of any abusive conduct on the part of Deputy Joseph was ever reported to the jail supervisors. Therefore, the jail supervisors could not have known of the risk to Thomas's health and safety. Furthermore, although two other deputies had heard "rumors" of Joseph's activities, the subjective "deliberate indifference" test requires that the jail officials not only be aware of these facts, but also that they actually draw the inference that a substantial risk of serious harm to Thomas existed. The fact that the jail officials perhaps should have done so on the basis of these rumors is not enough.[3]

## IV. CONCLUSION

As set forth above, the Plaintiff has failed to establish an "official policy" for the purposes of § 1983 liability. Furthermore, even had Plaintiff been able to allege an "official policy", she has failed to establish a genuine issue of material fact that the County knew of and disregarded an excessive risk to Thomas's health and safety as required by the Supreme Court's subjective "deliberate indifference" test. Accordingly, the Defendant's Motion for Summary Judgment is **GRANTED** and all federal claims are hereby **DISMISSED WITH PREJUDICE.** The Court declines to exercise its supplemental jurisdiction over the Plaintiff's state law claims, and those claims are hereby **DISMISSED WITHOUT PREJUDICE.** All parties are to bear their own costs incurred herein to date.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Order issued this date, Defendant's Motion for

---

**3.** Additionally, the Court notes that neither of the two deputies who had heard these ambiguous rumors was in a supervisory position.

Summary Judgment is **GRANTED** and all federal claims are hereby **DISMISSED WITH PREJUDICE.** The Court declines to exercise its supplemental jurisdiction over the Plaintiff's state law claims, and those claims are hereby **DISMISSED WITHOUT PREJUDICE.** All parties shall bear their own costs incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**