Rose Marie CAIN

v.

**Andrew ROCK and Anne Arundel County.**

No. Civ. Y–98–1930.

United States District Court, D. Maryland.

Oct. 14, 1999.

Richard C. Bittner, Glen Burnie, MD, for plaintiff.

Daniel Karp, Baltimore, MD, for defendant Andrew Rock.

John F. Breads, Jr., Senior Assistant County Attorney, Annapolis, MD, for defendant Anne Arundel County.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

### I.

This matter is before the Court on the defendants' Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff, Rose Marie Cain ["Cain"], asserts claims of common law battery and civil rights violations pursuant to 42 U.S.C. § 1983 against defendant Andrew Rock ["Rock"] and claims of civil rights violations against defendant Anne Arundel County ["the County"].

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A "genuine" dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Sylvia Dev. Corp. v. Calvert County,* 48 F.3d 810, 817 (4th Cir. 1995). Failure to demonstrate a genuine issue for trial will result in summary judgment. *Strag v. Board of Trustees,* 55 F.3d 943, 951 (4th Cir.1995). The mere existence of a scintilla of evidence in support of Plaintiff's case is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Plaintiff's evidence, however, is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

## II. FACTUAL BACKGROUND

Andrew Rock was employed as a Detention Officer at the Anne Arundel County Detention Center from October 13, 1988, to June 11, 1997. Before 1997, Rock had performed his duties satisfactorily and was never the subject of a sexual misconduct complaint. On March 18, 1997, the Superintendent of the Detention Center, Richard Baker, requested an investigation of claims that Rock had performed cunnilingus on a prisoner, Rose Marie Cain, in her cell.

The alleged incident was first reported to authorities by Cain's cellmate, Valerie Lynn Reed. Reed told a Detention Center supervisor that on March 16 or 17 Rock had visited the cell that Cain shared with Reed. While Reed pretended to sleep, she

observed Rock give Cain a number of gifts, including bras, thong underwear, cigarettes, candy, and yellow pills. According to Reed, Rock asked Cain to model the underwear and then engaged Cain in the sexual act. Reed also stated that Cain told her that she and Rock had engaged in "sex" a "number of times in that cell." The County Police Department's investigation revealed that Rock was working the "midnight" shift and Cain was housed on Post 4 during the time of the alleged incident. The Police investigator interviewed Reed, who recounted the events she had reported previously to Detention Center officials.

On March 21, Detention Center officials advised Rock that he had been placed on administrative leave pending investigation into the matter. That evening, Detention Center officers conducted a "shake down" of Cain's cell and recovered the contraband items detailed above. When officials questioned Cain, she stated that Rock had given her the items, but they had only "hugged and kissed."

Four days later, the County Police interviewed a second inmate, Brenda Fitzsimmons, who had occupied a cell adjacent to Cain's cell. Fitzsimmons told the investigator that on three occasions during March 1997 she observed Rock entering Cain's cell and heard sounds she associated with sexual activity. Fitzsimmons also claimed that Cain had told her that day— March 25—that she had been a willing participant in the sexual activity, but was going to charge Rock with rape and "take him for everything he's got."

The Police interviewed Cain the following day. She stated that Rock had given her gifts on different occasions and the two had started kissing and writing notes. Cain also stated that their interaction had culminated in a single act of intercourse. When asked if Rock had ever forced or threatened her in order to obtain sex, Cain answered that "[h]e did sort of lead me, but he didn't force me." In the pleadings and discovery, Cain has alleged that, during the time of the incidents, she was in a "psychotic state of mind" due to various medications. She has also stated that Rock's gifts to her resulted in infractions that kept her under Rock's supervision. Finally, Cain has also alleged that Rock took advantage of her mental and physical state to engage in non-consensual sexual acts with her.

The County subsequently charged Rock with misconduct in office and terminated his employment as the result of the alleged sexual misconduct. On November 14, 1997, before the Circuit Court of Anne Arundel County, Rock entered an "Alford" plea to misconduct in office and received forty hours of community service and one year of unsupervised probation.

Rock denies that he ever had sex with a female prisoner. He also denies Cain's allegations that he gave her contraband while she was imprisoned at the Detention Center, and testified that he did not have any information regarding Cain's medications and thought that she "appeared normal, her behavior appeared normal."

## III. DISCUSSION

### A. Defendant Anne Arundel County

■■■ Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983 (1998). Because municipalities—like Defendant Anne Arundel County—qualify as "persons" for the purposes of Section 1983, they can be liable for damages when they deprive citizens of federal rights.[1] *Monell*

1. In contrast to certain government officials, municipalities do not enjoy qualified or abso-

lute immunity from suit under § 1983. *Leatherman v. Tarrant Cty. Narcotics Intelli-*

*v. New York City Dep't of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). A municipality, however, may not be held liable simply because it employs a tortfeasor—"in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.*

To establish municipal liability, the plaintiff must show that: (1) a government actor deprived the plaintiff of his or her federal rights; and (2) the harm was the result of a municipal "policy, custom, or pattern." *Id.* Municipal *policy* arises from written policy statements, ordinances, and regulations, *id.* at 690, 98 S.Ct. at 2036, certain decisions by municipal policymakers, *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), and certain omissions by policymakers that show a "deliberate indifference" to the rights of citizens, *City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In contrast, municipal *custom* may arise if a course of action is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell,* 436 U.S. at 690, 98 S.Ct. at 2036.

The plaintiff alleges that her Fourth, Fifth, and Eighth Amendment rights, as applied through the Fourteenth Amendment, were violated by various actions of Anne Arundel County and its employees. In particular, Cain alleges that the County or its employees: used excessive force; inflicted unnecessary and disproportionate pain; exhibited deliberate indifference to the alleged sexual offense and her serious medical needs; and forced her to take medication that weakened her will to resist Rock's sexual advances. In addition, the plaintiff alleges that each of these actions occurred pursuant to "an unofficial custom or policy, or official policy" of allowing male officers to guard female inmates when they were mentally ill, in solitary

*gence and Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517

confinement, and during compulsory drug ingestion.

1. *Official Policies*

An official policy is fairly easy to discern; it is usually found in written policy statements, ordinances, and regulations. *Monell,* 436 U.S. at 690, 98 S.Ct. at 2036. Where the plaintiff claims that a particular municipal policy itself violates federal law, the resolution of fault and causation issues is straightforward. *Board of County Commissioners v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). Where, however, the plaintiff claims that the municipality itself has not caused the injury, but rather has caused an employee to violate federal rights, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of the employee." *Id.* at 405, 117 S.Ct. at 1389. At the least, there must be an affirmative link between the policy and the particular constitutional violation alleged, *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality), that make the two a "close fit," *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir.1999).

The official policies at issue in this case are the policies adopted by the Anne Arundel County Superintendent of Detention Facilities. Anne Arundel County admits that among the many policies attributable to it is the policy of allowing male guards to oversee female inmates, even when the latter are under medication, mentally ill, or in disciplinary segregation. Because there is no constitutional violation involved with the general policy of cross-gender guarding, Cain cannot make out a valid Section 1983 claim on this issue.

Given that the policy of cross-gender guarding did not violate Cain's constitutional rights, Cain will need to follow the

(1993).

more typical route to proving a Section 1983 violation. *See Spell v. McDaniel*, 824 F.2d 1380, 1387–88 (4th Cir.1987). First she must point to an underlying violation of her constitutional rights. For present purposes, the court assumes arguendo that if Rock sexually assaulted Cain, that act would suffice as a violation of Cain's constitutional rights as a prisoner. *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998); *Thomas v. Galveston County*, 953 F.Supp. 163, 167 (S.D.Tex.1997).

Second, Cain must meet the strict standards of fault and causation to link the facially constitutional municipal policy to the alleged assault. When a plaintiff relies on a municipal policy that is not itself unconstitutional, "considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and causal connection between the 'policy' and the constitutional deprivation." *Tuttle*, 471 U.S. at 824, 105 S.Ct. at 2436. To prove causation in a § 1983 municipal liability case, the plaintiff must demonstrate that the municipality was the "moving force" behind the alleged injury. *Brown*, 520 U.S. at 404, 117 S.Ct. at 1388. This proof requires a "direct causal link" between the municipal policy and the deprivation of federal rights, *id.*, such that the policy made the specific violation almost inevitable, rather than merely likely to happen, *Carter*, 164 F.3d at 218.

In this case, Cain has failed to demonstrate that the County's policy was the direct cause of the alleged assault. Indeed, Cain has provided little more than allegations and legal conclusions about how the policy made her more vulnerable to assaults. It is simply not sufficient, for § 1983 purposes, to show that a municipal policy put an employee in the position to commit a constitutional tort. More evidence of causation is necessary. *See Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36.

Likewise, Cain has failed to establish fault on behalf of the County. A plaintiff who seeks to prove municipal liability under a facially lawful municipal policy must demonstrate that the policy was adopted with "deliberate indifference" to its known or obvious consequences. *Brown*, 520 U.S. at 407, 117 S.Ct. at 1390. The standard of "deliberate indifference" is a high one, requiring the plaintiff to show that the municipality disregarded a known or obvious risk that the policy would lead to the deprivation of federal rights. *Id.* at 410, 117 S.Ct. at 1391. Here, the record contains no evidence of indifference or even mere negligence by the County with regard to its official policies. To the contrary, the record shows that the County does protect inmates from mistreatment by detention officers. For example, the County has adopted a policy prohibiting male guards from strip searching female prisoners absent an emergency. Moreover, the record shows no history of assaults by Rock or others, and when the present controversy arose, the County moved quickly to investigate Rock's activities. In short, the evidence, far from indicating indifference, shows that the County acted diligently.

In sum, the Court finds that the County's official policies were not the cause of Rock's alleged sexual assault on the Plaintiff, and the County did not act with deliberate indifference toward violations of this type. It follows that Cain has failed to establish municipal liability for the County's official policy of cross-gender guarding.

### 2. *Unofficial Policy or Custom*

Cain has also charged that detention officers violated her constitutional rights pursuant to "unofficial policies or customs" of Anne Arundel County. A plaintiff may establish municipal liability if a violation of a federal right is the result of a municipal custom. *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2036. Municipal *custom* may arise if a course of action is "so permanent and

well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691, 98 S.Ct. at 2036.

Cain claims that the alleged sexual assault was caused by the unofficial County policies or customs of (a) allowing corrections officers to medicate inmates or compel psychoactive drug consumption; and (b) allowing officers nearly unlimited discretion in use of solitary confinement. In its Motion for Summary Judgment, the County disputed that these policies exist. Consequently, the Court will treat them as alleged "unofficial policies or customs."

 Again, the Plaintiff has failed to meet her summary judgment burden. A "custom" is a widespread and well-settled pattern of municipal conduct. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. "Neither the existence of such a . . . custom nor the necessary causal connection can be established by proof alone of the single violation charged." *Spell v. McDaniel,* 824 F.2d 1380, 1388 (4th Cir.1987). Cain has produced no evidence to demonstrate that the alleged customs exist. The only potentially supportive evidence is Rock's statement that he knew that Cain was taking medication while at the Detention Center. This evidence, however, does not support an inference that the County allowed detention officers—as opposed to qualified medical personnel—to medicate inmates. The plaintiff has also failed to produce evidence on her solitary confinement claims. As a result, the Court finds that Cain failed to meet her summary judgment burden on the issue of an unofficial policy or custom. Without this element, Cain's Section 1983 claim for municipal liability must fail.

## B. *Defendant Andrew Rock*

Cain's complaint also asserts a common law battery claim and several Section 1983 claims against Andrew Rock in his individual capacity. To establish a Section 1983

claim against a state actor, the plaintiff must show that the defendant acted under color of state law to violate the plaintiff's federal rights. 42 U.S.C. § 1983. Because the parties do not dispute that Rock was acting under color of state law, the critical issue is whether Cain has demonstrated that Rock violated her constitutional rights.

Cain's claims allege violations of the both the Fourteenth Amendment's Due Process Clause and the Eighth Amendment [2] as applied via the Fourteenth Amendment. Specifically, Cain alleges that: Rock's assault involved excessive force; the assault qualifies as cruel and unusual punishment; and Rock's indifference towards Cain's physical and mental state was so shocking to the conscience as to be a violation of due process. The Court will address each of these claims in turn.

 The allegations of excessive force and cruel and unusual punishment implicate prisoners' rights under the Eighth Amendment. The Eighth Amendment governs both the treatment prisoners receive while incarcerated and the conditions of confinement. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). It also requires officials to provide humane conditions of incarceration and "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984).

 In the present case, Cain has failed to establish a claim of excessive force by Rock. Aside from mere allegations, Cain has provided no evidence that Rock's actions were motivated by malice or the will to inflict pain. Indeed, in her deposition, Cain stated that Rock did not physically harm her, and the remainder of

**2.** Although Cain raised the issue of excessive force as a Fourth Amendment claim, linked somehow to searches and seizures, the Court agrees with Rock that this claim is more

properly considered as a claim under the Eighth Amendment. There is no evidence of searches or seizures in the record.

the testimony indicates no malice on Rock's part. Consequently, the Court dismisses Cain's claim that Rock violated her Eighth Amendment rights by the use of excessive force.

Closely related to Cain's claim of excessive force is the claim that the alleged assault qualifies as cruel and unusual punishment in violation of the Eighth Amendment. Cain's attempt to bring her claim within the rubric of the Amendment, however, must fail. Whether a random act of violence by a prison guard constitutes "cruel and unusual punishment" for Eighth Amendment purposes is a question of first impression in the Fourth Circuit. *See Simms v. Jackson,* 91 F.3d 133 (4th Cir. 1996) (unpublished opinion) (noting that, in the particular case, there was no need to address the issue of whether a single "spontaneous" strike by a prison guard constitutes punishment under the Eighth Amendment). The issue, however, has been addressed by other circuits:

> The thread common to all [cases that implicate the Eighth Amendment] is that "punishment" has been deliberately administered for a penal or disciplinary purpose, with the apparent authorization of high prison officials charged by the state with responsibility for care, control, and discipline of prisoners. In contrast, although a spontaneous attack by a guard is "cruel" and, we hope, "unusual," it does not fit any ordinary concept of "punishment."

*Johnson v. Glick,* 481 F.2d 1028, 1032 (2d Cir.1973) (Friendly, J.); *see George v. Evans,* 633 F.2d 413, 415–416 (5th Cir.1980) (following Second Circuit). *But see Pelfrey v. Chambers,* 43 F.3d 1034, 1037 (6th Cir.1995) (rejecting *Johnson* as ignoring the "power arrangements that exist within the prison environment").

■ This Court agrees with the reasoning of the Second and Fifth Circuits. The assault at issue in the present case plainly falls outside of "cruel and unusual punishment" jurisprudence. Rock's alleged sexual acts were in direct violation of prison regulations, neither authorized nor condoned by prison officials, and completely removed from the purposes of the correctional facility. These acts, though regrettable, were random, and the Court holds that a random sexual assault by a prison guard—while cruel and not ordinary—does not qualify as "punishment" for Eighth Amendment purposes. Accordingly, the Court rejects Cain's Eighth Amendment claim.

■ Prisoners who are the subject of unauthorized assaults, however, may still have a claim under the Fourteenth Amendment's Due Process Clause. *Johnson,* 481 F.2d at 1032; *George,* 633 F.2d at 416. Cain's final Section 1983 claim against Rock alleges that he violated her substantive due process rights by exhibiting "deliberate indifference to her serious medical needs that shocks the conscience." Because this claim involves a deprivation of Cain's rights that occurred outside of any formalized government procedure, it is an allegation of a substantive due process violation. *See County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1713, 140 L.Ed.2d 1043 (1998). A plaintiff can make out such a violation when the alleged conduct "amount[s] to a brutal and inhumane abuse of official power that is literally shocking to the conscience." *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980); *see Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952).

■ In the prison context, correctional officers are in a position of authority and inmates in a position of dependence. *See DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 198–200, 109 S.Ct. 998, 1004–06, 103 L.Ed.2d 249 (1989). The responsibility of the government and its agents to provide for citizens' well-being and safety is at its highest when the state takes citizens into custody. *See id.* Substantive due process protections, however, do not guarantee due care by government officials; "liability for negligently inflicted harm is categorically be-

neath the threshold of constitutional due process." *Lewis,* 523 U.S. at ——, 118 S.Ct. at 1718. At the same time, due process does not require plaintiffs to prove malice or intent. *Id.* The Supreme Court has made clear that "deliberate indifference" by officials in the prison context can rise to a conscience-shocking level because "forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare." *Id.* at ——, 118 S.Ct. at 1718–19.

In the present case, the Court finds that Cain's allegations and evidence, if true, set forth a scenario that could shock the judicial conscience. Given the "power arrangements" in the prison environment, *see Pelfrey v. Chambers,* 43 F.3d 1034, 1037 (6th Cir.1995), and the custodial role of correctional officers, a sexual assault by a guard is a shocking abuse of power, particularly where the inmate is mentally or physically incapacitated. Cain has alleged that Rock engaged her in sexual activity, and there is testimony in the record that he did so on several occasions. Cain has further alleged and testified that she was medicated and "mentally ill" at the time of the alleged incidents. Moreover, she has attested that her condition would have been obvious to anyone who saw her and that Rock was "deliberately indifferent" to her medical needs. Rock has admitted that he knew Cain was on medication at the time of the alleged incidents, though she appeared normal to him. Because these genuinely disputed facts support her claim that Rock was "deliberately indifferent" to her welfare and, if true, rise to the level of conscience-shocking conduct, the Court finds that Cain has provided sufficient evidence to defeat Rock's Motion for Summary Judgment on her due process claim.

In sum, the Court finds that the following issues are material to Cain's claim of a due process violation and are the subject of genuine factual disputes: (1) whether sexual contact occurred between the parties; and (2) whether Rock exhibited "deliberate indifference" to Cain's mental or physical welfare. Furthermore, the Court holds that if these factual issues are resolved in Cain's favor, then Rock's sexual activity with an inmate with serious medical or mental health needs could shock the judicial conscience. Cain has provided evidence sufficient to preclude summary judgment on her due process claim, but has failed to meet her burden on the Eighth Amendment claims.

### C. Punitive Damages

In his Motion for Summary Judgment, Rock sought a ruling on Cain's claims for punitive damages under her common law battery claim and Section 1983 claims. The Court rules in favor of Rock on the plaintiff's battery claim, but must deny Rock's motion to prevent punitive damages for the plaintiff's Section 1983 claims.

Maryland law requires a finding of actual malice before a jury may award punitive damages. *Montgomery Ward v. Wilson,* 339 Md. 701, 733, 664 A.2d 916, 932 (1995). "Actual malice," in this context, refers to "conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud." *Id.* Furthermore, punitive damages may not be based on a theory of "implied malice" and must be established by "clear and convincing evidence." *Bowden v. Caldor, Inc.,* 350 Md. 4, 23–24, 710 A.2d 267, 276–77 (1998). Cain has failed to set forth clear and convincing evidence that Rock acted with evil motive or an intent to injure Cain. Because "implied malice" is also unavailable to Cain, the Court grants Rock's motion to preclude a punitive damages award at trial.

Section 1983 law, however, imposes lesser evidentiary and liability standards. A jury may assess punitive damages in a Section 1983 action when the defendant's conduct was motivated by "evil motive or intent, or when it involves reckless or callous indifference to the federally

protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). This threshold applies even when recklessness is the underlying standard of liability. *Id.* In *Cooper v. Dyke*, a Section 1983 action brought by a pretrial detainee, the Fourth Circuit noted that "the callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on the § 1983 claim." 814 F.2d 941, 948 (1987). The same reasoning applies here. Because Cain has established a genuine issue of material fact as to Rock's deliberate indifference, the Court cannot preclude the trier of fact from awarding punitive damages if that state of mind is established at trial. The Defendant's motion is denied.

D. *Unnamed Officers*

Cain's complaint also alleges two Section 1983 charges against "unknown correctional officers" for due process violations linked to solitary confinement and forced medication. Because she has failed to identify these officers, even after discovery, the Court dismisses Cain's claims against these officers without prejudice. *See Haussman v. Fergus*, 894 F.Supp. 142, 150 (S.D.N.Y.1995).

IV. CONCLUSION

Based on the foregoing analysis, the County's Motion for Summary Judgment will be granted, and Rock's Motion for Summary Judgment will be granted in part and denied in part.

*ORDER*

In accordance with the attached Memorandum, it is this 14th day of October 1999, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant Anne Arundel County's Motion for Summary Judgment BE, and the same IS, hereby GRANTED; and

2. That Defendant Andrew Rock's Motion for Summary Judgment BE, and the same IS, hereby GRANTED IN PART AND DENIED IN PART; and

3. That judgment BE, and the same hereby IS, ENTERED in favor of Defendant Anne Arundel County; and

4. That copies of this Memorandum and Order be mailed to counsel for the parties.